**People of the State of Illinois, Plaintiff-Appellee, v. Archie Lee Shannon, Defendant-Appellant.**

**Gen. No. 51,132.**

First District, First Division.

April 8, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Carolyn Jaffe and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael C. Zissman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was found guilty of murder in the manner and form as charged in an indictment, which contained two counts, both charging defendant with the murder of Verlene Shackleford. On appeal, defendant primarily contends that Count I failed to charge an offense, and "the verdict was fatally defective, in that it is impossible to ascertain therefrom whether the jury found the defendant guilty as charged in Count I or Count II." Defendant also asserts prejudicial trial errors, including that he was not proved guilty of murder beyond a reasonable doubt.

On January 11, 1965, while in the apartment of Verlene Shackleford, his aunt, defendant participated in a family quarrel, which resulted in the death of Verlene. Those present included Verlene, Curtis Hugges (her common-law husband), Ruby and Jimmie Shackleford (her children), Myrtle Shannon (defendant's common-law wife), and defendant. At the trial, Curtis Hugges and Ruby Shackleford testified for the State in chief and Jimmie Shackleford in rebuttal.

The testimony for the State shows the following course of events. On January 11, 1965, at about 2:00 a. m., the defendant had an argument and a scuffle with his cousin, Jimmie Shackleford, in the lobby of the apartment building where both lived. Defendant then went to his own apartment where he argued with his wife, Myrtle Shannon. Thereafter, Myrtle went downstairs to the apartment of defendant's aunt, Verlene Shackleford, and the Shackleford family. Defendant followed his wife to the Shackleford apartment where the argument was continued. After defendant struck his wife Myrtle, she sought protection behind Verlene Shackleford and Curtis Hugges. Verlene and Jimmie Shackleford tried to calm the defendant and to stop the argument. The defendant

left the Shackleford apartment and briefly returned to his own apartment, where he obtained a rifle. The defendant then returned to the Shackleford apartment with the rifle. The door had been closed and locked after defendant had left, and when he returned he demanded readmittance and attempted to force the door open. When Verlene Shackleford identified herself to him through the door, the rifle was fired through the door, fatally injuring her.

Defendant and his wife testified for the defense. In substance, defendant testified that he got the rifle after some altercations with a neighborhood gang and kept it in his apartment. Shortly before the fatal shooting, he caught his cousin Jimmie smoking marijuana in the hallway and was attempting to tell his aunt Verlene about her son's criminal activities and associations. Jimmie pulled a knife on him and was attempting to prevent him from telling Verlene. Defendant did not know the gun was loaded. He thought the catch was on, and he did not intend to fire the gun through the door. The gun went off accidentally when defendant stumbled, and it dropped from his hand.

Defendant's wife denied a scuffle with her husband and stated there was an argument between Jimmie Shackleford and the defendant, and she was accidentally struck because she was standing between the two. On cross-examination she admitted making a statement to a police officer that "Archie hit me on the side of the head and pulled my hair. Archie then said something about I'll fix you. Then he went upstairs. In a few minutes he was shaking the door on the apartment and trying to get in. Aunt Verlene was at the door and was trying to talk to him. But she had only said a few words when I heard the shot. Then I heard Curtis (that is Verlene's husband) say to Archie, if he would open the door to Archie, you have done shot Aunt Verlene. He asked, ain't you did

enough. And Archie was still calling Jimmie. I ran into the closet about this time."

On rebuttal, Jimmie Shackleford testified as a State's witness over the objection of defendant that Jimmie was an occurrence witness, and his testimony should have been put on in the State's case in chief. He stated his quarrel with defendant originated about some women in defendant's car and whether Jimmie was going to tell Shannon's wife Myrtle about them.

The statute under which both counts in the indictment were drawn reads as follows:

"§ 9–1. Murder.]

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

"(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

"(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

"(3) He is attempting or committing a forcible felony other than voluntary manslaughter.

"(b) Penalty . . . ."

Count I of the indictment states in part: ". . . on January 11th, 1965, at and within said County, Archie Lee Shannon committed the offense of murder, in that he, intentionally and knowingly shot and killed Verlene Shackleford with a rifle, without lawful justification, in violation of Chapter 38, Section 9–1 of the Illinois Revised Statutes, 1963. . . ."

Count II states: ". . . on January 11th, 1965, at and within said County, Archie Lee Shannon committed the

115

offense of murder, in that he, intentionally and knowingly shot and killed Verlene Shackleford with a rifle, knowing that such shooting with a rifle, created a strong probability of death or great bodily harm to Verlene Shackleford, without lawful justification, in violation of Chapter 38, Section 9-1(a)(2) of the Illinois Revised Statutes, 1963. . . ."

Defendant argues that Count I was framed in terms of section 9-1, whereas section 9-1 "per se" does not constitute an offense with which a person can be charged; that only the "subsections" of section 9-1 define and enumerate the statutory offenses; that Count I of the indictment does not charge any of the offenses specified in those subsections and thus fails to charge an offense against the laws of Illinois. "The state of mind necessary to make the homicide constitute murder within the definitions of those subsections is not alleged in Count I. That Count does not allege that the defendant either intended to kill or do great bodily harm to the deceased or another, or that he knew his acts would cause the death of the deceased or another."

Defendant further argues that the court instructed the jury as to the elements of the offense of murder in the language of the statute, section 9-1(a)(1) and (a)(2), while nowhere in the indictment was the defendant charged with murder as defined in section 9-1(a)(1). Thus the jury could have found the defendant guilty upon a set of facts not alleged in the indictment.

 In People v. Pronger, 48 Ill App2d 477, 199 NE2d 239 (1964), this court said (p 481):

"An indictment need not state specifically the statute violated by the acts alleged to be a crime, and this holds true where there are several statutory provisions under which the charge might fall. . . . Also, an indictment is sufficient if it informs an accused of the charge, enables him to prepare a defense, and

protects him from further prosecution . . . and it is not necessary that an indictment contain all the language of the statute on the subject. People v. Love, 310 Ill 558, 567, 142 NE 204 (1924)."

Also, in People v. Clarke, 407 Ill 353, 95 NE2d 425 (1950), it is said (p 359):

"... where the language of the information is as fully descriptive of the offense as the language of the statute denouncing it, and alleges every substantial element of the offense as defined by statute, the information is sufficient."

■ After an examination of Count I and in the light of the foregoing authorities, we find that Count I properly charges the offense of murder. Count I included "that he, intentionally and knowingly shot and killed Verlene Shackleford with a rifle, without lawful justification. . . ." Although Count I does not specify the particular subsection on which the count was based and the jury instructed, it advised the defendant with reasonable certainty of the precise offense charged, including its essential elements, and adequately notified defendant of the nature and cause of the accusation against him. (People v. Patrick, 38 Ill2d 255, 258, 259, 230 NE2d 843 (1967).) Also, we find that Count II properly charged defendant with the offense of murder.

■ We find no merit in defendant's further contention that "the verdict was fatally defective, in that it is impossible to ascertain therefrom whether the jury found the defendant guilty as charged in Count I or Count II." In People v. Lymore, 25 Ill2d 305, 185 NE2d 158 (1962), it is said (p 307):

"A general finding of guilty is presumed to be based on any good count in the indictment to which the proof is applicable. . . . This court has also held that in a case where an indictment contains several counts

arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count, and if the punishment imposed is one which is authorized to be inflicted for the offense charged in any one or more of the counts, the verdict must be sustained."

See, also, People v. Clifton, 408 Ill 475, 477, 97 NE2d 298 (1951), and People v. Savage, 5 Ill2d 296, 301, 125 NE2d 449 (1955). We conclude the evidence was sufficient to support a finding of guilty of the offense of murder on either count.

██ ██ Considered next is defendant's contention of prejudicial trial errors. We find no error in the trial court permitting Jimmie Shackleford to testify as a rebuttal witness. His testimony was offered to contradict defendant's accusation against him, and although part of his testimony might have been proper as evidence in chief, we find there was no abuse of discretion in receiving it as rebuttal. In People v. Lion, 10 Ill2d 208, 139 NE2d 757 (1957), it is said (p 217) :

"Although testimony that would be proper as evidence in chief should not be reserved for rebuttal, these matters rest largely within the discretion of the trial court and such rulings will ordinarily not be set aside upon review."

See, also, People v. Burnett, 27 Ill2d 510, 190 NE2d 338 (1963), where it is said (p 518) :

"We have examined the record and find that the testimony of both witnesses was only corroborative of the case in chief and was apparently contradictory of defendant's evidence and was, therefore, properly admitted in rebuttal."

Defendant next contends that he was prejudiced by the final argument of the State which overemphasized the

importance of the fact of her death in relation to all the other facts which must be proved in order to convict the defendant. It appealed "to the jury's sympathy and prejudice by telling them, ever so dramatically, that the night she died, the bell tolled 'for thee, for thee.' Such argument has no place in a court of law."

 We find no prejudicial error here. The record does disclose emotion and range of argument on the part of the State's Attorney and an "eagerness to secure a conviction." While we might consider some the State's remarks somewhat imaginative and dramatic, we do not believe these remarks deprived defendant of a fair trial. We believe the State's argument comes within the pronouncements of People v. Fort, 14 Ill2d 491, 153 NE2d 26 (1958), where it is said (p 501):

> ". . . Nor is it improper to dwell on the evil results of crime and to urge a fearless administration of the law."

██ ██ Defendant also complains that the court refused defendant's Instructions Nos. 6 and 14. We have examined the instructions given and refused and find the jury was properly instructed. Defendant's Instruction No. 6 tended to encourage disagreement of the jury, and Instruction No. 14 was not relevant.

Finally, we consider defendant's contention that "the evidence did not establish the defendant's guilt of the offense charged beyond all reasonable doubt, inasmuch as the essential element of the defendant's state of mind was not established beyond all reasonable doubt."

Defendant argues that the State's evidence, if it proved anything, proved an intent to kill either Myrtle Shannon or Jimmie Shackleford but not Verlene Shackleford, and neither the indictment nor the instructions to the jury included a charge of transferred intent. Defendant further argues that the only evidence of his state of mind, other than his own testimony that he did not intentionally

cause the gun to discharge, was circumstantial evidence, and while intent as an element of an offense may be proved by circumstantial evidence, it is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. People v. Wilson, 400 Ill 461, 473, 81 NE2d 211 (1948).

In People v. Coolidge, 26 Ill2d 533, 187 NE2d 694 (1963), it is said (p 536):

> "However, since intent is a state of mind, and, if not admitted, can be shown only by surrounding circumstances, it has come to be recognized that an intent to take life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. . . . It is not requisite or necessary that the party charged should have brooded over the intent, or entertained it for any considerable time, but it is enough if at the instant of the assault he intended to kill the party assaulted, or it will be enough if he is actuated in making the assault by wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstances that, if death had ensued, the killing would have been murder. . . . since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended."

The instant record, examined in the light of the foregoing guidelines, presents sufficient and satisfactory evidence from which the jury could have reasonably con-

cluded that the defendant was intending to strike Verlene Shackleford when he fired through the door. There was no denial that defendant had participated in the family quarrel, that he had left the apartment and shortly thereafter returned with a loaded gun, and that this was the instrument of death while in the possession of defendant. The evidence also shows that Verlene Shackleford had entered the dispute between defendant and his wife, and that Verlene Shackleford had identified herself through the door to the defendant immediately before she was shot. The jury was not compelled to accept defendant's account as conclusive but was required to consider the surrounding circumstances and the probability or improbability of defendant's story. (People v. Wiggins, 12 Ill2d 418, 423, 147 NE2d 80 (1957).) We believe the facts here come within the pronouncements made in People v. Davis, 35 Ill2d 55, 219 NE2d 468 (1966), where it is said (p 61):

> "To justify a conviction of murder, it has not been necessary that the accused should have deliberately formed an intent to kill; it has been sufficient to show that he voluntarily and wilfully committed an act, the direct and natural tendency of which was to destroy another's life. . . . The intent is implied from the character of the act."

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.