**People of the State of Illinois, Plaintiff-Appellee, v. Hushor Robinson, Defendant-Appellant.**

**Gen. No. 51,665.**

First District, Fourth Division.

February 14, 1969.

Rehearing denied April 2, 1969.

Gerard E. Dempsey, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward Stasukaitis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant was charged in the first of a two-count indictment with having intentionally and knowingly shot and killed James McGee with a gun, without lawful justification; and in the second count with intentionally and knowingly having shot and killed James McGee with a gun, knowing that such shooting with a gun created a strong probability of death or great bodily harm to said James McGee, without lawful justification. In a bench trial the defendant was found guilty on both counts and sentenced to a term of not less than 14 nor more than 15 years in the penitentiary on each count, the sentences to run concurrently.

In this court the defendant contends:

1) The trial court improperly admitted into evidence a photograph showing the nature and extent of the fatal wound of the deceased;

2) The trial court erred in allowing the prosecution to make arguments concerning the photograph and in considering the photograph and the argument in reaching a decision; and

3) Defendant was not proved guilty beyond a reasonable doubt.

The following statute is involved:

Ill Rev Stats 1963, c 38, § 9–1. Murder. (a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter.

At the beginning of the trial a stipulation was entered into between the State and the defendant through their respective attorneys that if Dr. J. W. Henry, a pathologist, were to testify it would be to the effect that on April 19, 1965, he performed a post mortem examination upon the body of James A. McGee (deceased), properly identified, and determined the cause of death to be from a gunshot wound to the brain.

In his brief the defendant states that from the very outset of the trial there was no issue as to the cause of the death of the deceased; he was killed by a bullet from a gun fired by the defendant.

EVIDENCE: State's Witnesses.

Grace McGee, wife of the deceased, testified that on the evening of April 18, 1965, at about 9:30 p. m., the defendant called upstairs to her third-floor apartment, for her husband to come down to his apartment on the first floor. The deceased refused, and the defendant started upstairs, together with Lonnie Kinnon, with

80

whom he had lived for seven years. The defendant came into the witness's kitchen, "wagging" a gun back and forth in his hand, telling the deceased to get out; he began beating the deceased on the head and kicking him. They all went downstairs to the defendant's apartment, where the defendant told the deceased to sit on the couch; that he was going to shoot him. The witness stated that at that time she, her husband, and the defendant were in the room; that Lonnie was in another room with a curtain drawn, when the defendant "just turned around and shot my husband, he shot him on the couch." She further testified that the defendant then gave the gun to Miss Kinnon and went running out the door.

Police Officers Linzy, Pharr and McGreal testified for the State.

Witnesses for Defense.

Lonnie Kinnon testified that she owned the building where the alleged offense was committed; that she occupied the first-floor apartment; that Mrs. McGee rented the third floor; that the defendant had lived with the witness in her apartment for about seven years, and that they were not married. She stated that the defendant helped her in running the building and she had given him authority to speak as the landlord. On the morning in question the witness had heard the deceased and Mrs. McGee quarreling, during which quarrel a window was broken in their apartment. Later that evening, when the deceased was in the first-floor apartment, she spoke to him about the window, asking him to replace it, and he swore at her, saying he would do it when he was ready. She went into her room, and heard the deceased and the defendant arguing; the defendant asked the deceased to go back upstairs. The defendant asked her to call the police; she heard scuffling and "a shot came in the room." She then heard a second shot; the defendant told her to call the police, that he had shot

the deceased, and he handed her the gun, saying he was going to get cigarettes and would be right back. Mrs. McGee was on the stairway and asked the witness if her husband was dead; the witness said she didn't know, and called the police.

The witness testified that she had five or six drinks of Scotch whisky on the day in question, but had nothing to drink after calling the police. (In rebuttal, Officer Linzy testified that while he was in the Kinnon apartment the evening in question, Lonnie Kinnon had a bottle of gin from which he saw her take more than two drinks; that she was talking in a very incoherent manner and in his opinion was intoxicated.) The witness stated that the police took pictures at the scene and found a shell under the television set in the bedroom; another shell was found inside the door to her room. She testified that a bullet went through the leg of the set about five inches from the floor.

Lawrence Cain testified that on April 19, 1965, he examined the couch in the Kinnon living room and did not see any holes in it; that on April 24, he had talked to Miss Kinnon about damage to the television set and removed the leg for repair. His testimony regarding the damage to the set was corroborated by Mercedes Reed, a friend of Miss Kinnon's, a witness for the defense.

The defendant testified in his own behalf that he saw the deceased about 8:00 p. m. on April 18, 1965, at which time the deceased was sitting in the apartment of Lonnie Kinnon; that the defendant did not go up to the third floor that day. He denied that he beat the deceased with a pistol or that he kicked him. He had gone into the kitchen and he heard Miss Kinnon talking to the deceased who was swearing at her; he then went back through the dining room, took his gun and put it in his belt, and went into the front room and told the deceased to leave. Miss Kinnon had gone into her bedroom and the defendant told her to call the police to

get the deceased out of the apartment. At that time, according to defendant's testimony, the deceased jumped up and put his hand in his pocket; the defendant backed up a step or two and pulled out his gun, telling the deceased he didn't want to hurt him and didn't want to let the deceased hurt him. The deceased asked him not to shoot, and the defendant called upstairs to Mrs. McGee, but thought she did not hear him. He had the gun pointed at the deceased; the deceased touched his hand and grappled for the gun, at which time it fired and the two men scuffled on the floor. When the defendant got both hands on the gun the deceased hit him and knocked him behind the couch; the defendant then raised up off the floor and fired a shot, and the deceased fell over on the couch. The defendant testified that the deceased had previously threatened his life several times, once on or about January 15, 1965, and again on April 1, 1965.

After the evidence for the defense, the State recalled Officer Linzy in rebuttal. He testified, as previously mentioned, with reference to Lonnie Kinnon's drinking. The State's Attorney showed him a photograph marked People's Exhibit 7 for identification—a photograph of the deceased lying on a slab in the morgue, and showing the bullet holes. The witness pointed out on the picture the place where the bullet entered the body of the deceased, at the tip of his nose. This exhibit was admitted in evidence. The court denied defendant's motion for a new trial, and in that motion no objection was made to the introduction of People's Exhibit 7.

OPINION.

██ In this court the defendant relies principally upon the alleged error of the trial court in admitting People's Exhibit 7. He argues that there was no reason for introducing the exhibit other than to inflame the passions of the trier of the fact and to create preju-

dice against the defendant. The question of where the bullet hole was in the body of the deceased is important. The defendant testified that when he shot the deceased, he, the defendant, was lying on the floor and the deceased was standing. On the other hand, Mrs. McGee testified that the deceased was sitting on the couch when the defendant shot him. The State argues that the gun was lined up with the victim's head, as the hole in the nose indicates a straight-on shot, and that if the defendant had fired the gun from the floor there would have been an angle to the shot.

When Officer Pharr examined the photograph he said the bullet had entered the forehead of the deceased, and indicated the place on the photograph. In rebuttal, Officer Linzy was shown People's Exhibit 7, and he pointed out the place where the bullet entered the body of the deceased. In order to determine where the bullet entered the body of the deceased, it would seem the best way would be to have the photograph before the trier of the fact. The defendant argues that the photograph was not needed as proof of any element of the offenses charged. With that conclusion we disagree, and feel that the photograph was of importance to the trier of the fact to determine where the bullet entered the body and that it bears very definitely upon the position of the deceased and the defendant at the time the shot was fired. Nor do we feel that the trier of the fact—whether judge or jury—has such a delicate sensibility as to be overwhelmingly swayed by the picture.

In People v. Hobbs, 297 Ill 399, 416, 130 NE 779, a case involving abortion, the trial court admitted in evidence the uterus of the deceased and held that the "jury had a pretty full description, but a view of the thing itself was an aid in understanding the nature and extent of the injury and determining how the offense was committed."

84

In People v. Tilley, 411 Ill 473, 104 NE2d 499, also an abortion case, the court said at page 476:

"It is also contended the court erred in admitting into evidence the preserved female parts of the deceased and allowing them to be exhibited to the jury: that such evidence could serve no useful purpose except to arouse anger and prejudice. This contention must likewise be rejected. The court has a reasonable discretion in the admission or rejection of exhibits in evidence. Even though the jury may have a full description of the injury by the testimony of physicians, it is not an abuse of discretion to admit in evidence the uterus itself to aid the jury in understanding the nature and extent of the injury and in determining how the offense was committed. It at least tended to prove a circumstance to be considered by the jury along with all the other evidence. See People v. Tilley, 406 Ill 398; People v. Hobbs, 297 Ill 399."

These cases are controlling in the instant case, and the trial court committed no error in admitting the photograph. It might be mentioned in passing that no objection was made by the defendant to the introduction of the evidence.

■ The comments of the State's Attorney in argument with reference to the exhibit were not improper. The argument was predicated upon the evidence, and it is proper for the State's Attorney to argue the guilt of the accused where he states, or it is apparent, that his opinion is based solely on the evidence. People v. Williams, 26 Ill2d 190, 186 NE2d 353.

■ The evidence was in sharp conflict. The trial court believed Grace McGee and disbelieved the testimony of the defendant and Lonnie Kinnon, and found the

85

defendant guilty. In People v. West, 15 Ill2d 171, 154 NE2d 286, the court said at page 176:

> "Where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge (People v. Litberg, 413 Ill 132; People v. Holt, 398 Ill 606) ; and unless it can be said the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable. (People v. Crawford, 387 Ill 616.)"

In the instant case the evidence established defendant's guilt beyond a reasonable doubt.

The defendant was sentenced to a term of 14 to 15 years on each of two counts of an indictment growing out of his alleged murder of James McGee. Count I charged the defendant with committing the offense of murder in that he intentionally and knowingly shot and killed James McGee with a gun without lawful justification, in violation of section 9–1, chapter 38 of Ill Rev Stats 1963. Count II of the indictment charged that the defendant committed the offense of murder in that he intentionally and knowingly shot and killed James McGee with a gun, knowing that such shooting with a gun created a strong probability of death or great bodily harm to James McGee, without lawful justification, in violation of section 9–1(a)(2), chapter 38 of Ill Rev Stats 1963.

■ It clearly appears from the record that the defendant was convicted and received two sentences for a crime that resulted from the same conduct, the killing of James McGee. This was improper. In People v.

Peery, 81 Ill App2d 372, at 377, 225 NE2d 730, the court said:

> "Defendant was convicted of attempted murder and of aggravated battery, both of which arose from the same conduct. Though this contention was not raised on appeal, under People v. Schlenger, 13 Ill 2d 63, 147 NE2d 316, concurrent sentences for crimes arising from the same conduct are improper . . . ."

In the case before us this point was raised by the defendant in a supplemental brief, and the error is apparent on the face of the record. Supreme Court Rule 615 provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. In his supplemental brief in this court the State's Attorney asks that the double sentence be corrected.

The judgment of the trial court finding the defendant guilty on the first count of the indictment is affirmed. The judgment on the second count is reversed.

Affirmed in part, reversed in part.

DRUCKER, P. J. and ENGLISH, J., concur.