**People of the State of Illinois, Plaintiff-Appellee,
v. Robert M. Acker, Defendant-Appellant.**

**Gen. No. 53,776.**

First District, First Division.

July 20, 1970.

 

McLennon, Sklodowski, Nelson and Rocco, of Park Ridge (Robert L. Sklodowski, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James W. Reilly, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial defendant was found guilty of the offenses of "disregarding a traffic light" and "involuntary manslaughter" as charged in the indictment. The jury found defendant not guilty of "operating a motor vehicle while under the influence of intoxicating liquor." Defendant was released on probation for the period of five years, with the first six months to be served in the Cook County House of Correction.

On appeal defendant contends that (1) his constitutional rights and statutory guarantees were violated when the prosecutor commented indirectly on defendant's failure to testify; (2) the prosecutor's closing argument was so improper and prejudicial that the defendant was denied his right to a fair trial; and (3) that the evidence presented in the trial court was not suffi-

cient to prove defendant guilty beyond a reasonable doubt.

On the morning of May 3, 1968, at approximately 2:00 a. m., at the intersection of Lawrence Avenue and River Road in Schiller Park, an automobile driven by the defendant, Robert Acker, collided with a motorcycle driven by Charles Baka. Baka died as a result of the injuries received in the collision. There were no eyewitnesses to the actual collision. Traffic lights controlled the intersectional vehicular traffic.

A witness for the State, Fred Minch, testified that he and Baka were riding their motorcycles in a northerly direction on River Road. As Minch and Baka approached the intersection of River Road and Lawrence Avenue, Baka was 15 or 20 feet behind him. As Minch approached the traffic light it was changing to yellow. Minch made a left-hand turn, heading in a westerly direction on Lawrence Avenue. Just as he was turning the light changed to red. After he made the turn Minch stopped and turned around and saw the decedent stop at the red light. As Minch motioned to Baka, he saw a car coming up on Baka from the rear, which was almost a block away. Minch observed that the car was going pretty fast. There was a slight drizzle of rain, so Minch, after motioning to Baka, proceeded down Lawrence Avenue and stopped under a viaduct to wait for Baka. Minch did not see the collision, but he did notice that the lights on the deceased's motorcycle were working.

Police Officer John Hoagland testified that on May 3, 1968, he was in the vicinity of Lawrence Avenue and River Road at approximately 2:00 a. m. The intersection was illuminated by a big light in front of a lounge south of Lawrence Avenue. Hoagland was traveling alone in his squad car, heading south on River Road. He was stopped at a red light at the intersection of

285

Lawrence Avenue and River Road and was in the outer lane closest to the curb. At that time he was observing the vehicle to his left which had one headlight. He heard a crash, looked up and saw a white object going across the front of his squad car and a yellow vehicle on River Road proceeding through the intersection. It was coming from the south, proceeding north. He again observed the traffic light, and it was red for the north-south traffic. He made a U-turn and proceeded "to give chase" to the yellow vehicle, which was swerving from side to side in the northbound lanes of River Road. He pulled up behind the vehicle, which was stopped approximately 759 feet from the intersection of Lawrence Avenue and River Road. The driver of the yellow vehicle (defendant) got out of his car, and Hoagland walked up to him and asked him what had happened, and defendant said he hit something. Defendant's clothing was very disarranged, and he appeared to stagger and leaned on the car for support. Hoagland noticed a strong odor of alcohol. Hoagland also testified, "I again asked him for identification and he took his billfold out and went through it and produced a New York driver's license."

After talking with defendant, Hoagland walked around to the front of defendant's vehicle and observed a motorcycle embedded in the front of the car. Upon searching the area, Hoagland found the deceased lying about six feet in front of the defendant's automobile or 765 feet from the point of impact. The deceased had nothing on his head and his shoes were missing. Hoagland then went back to the intersection of Lawrence Avenue and River Road and found part of a tool kit and parts of a motorcycle in the intersection, and on the side of the road approximately 30 to 40 feet from the center of the intersection he found a white helmet, which belonged to the deceased. This was the white object that he had seen going across the front of his squad car. He found one of the victim's shoes on the west side of River

Road about 25 or 30 feet from the stoplight, about three feet off the pavement. The second shoe was found to the north of the stoplight on the east side of River Road about the same distance away.

Another witness for the State, Captain Paul Ellis of the Schiller Park police department, testified concerning defendant's general appearance after the collision. He noticed that defendant's breath had a moderate odor of alcoholic beverage, his clothing was disarranged and his walk was swaying. Although defendant passed several sobriety tests, it was the opinion of Captain Ellis that the defendant was under the influence of alcoholic beverage.

As previously noted, the jury returned verdicts of "guilty" of the traffic violation and involuntary manslaughter charges. They found defendant "not guilty" of the intoxication charge.

Initially considered is defendant's contention that he was not proved guilty beyond a reasonable doubt of either of the two offenses. Defendant argues that a charge of involuntary manslaughter requires proof of a conscious awareness of risk and a disregard of it. Both elements are necessary, and also the prosecution must prove that the causal connection with the death of another resulted from reckless and wanton conduct. Defendant's authorities include People v. Sikes, 328 Ill 64, 159 NE 293 (1927), where it is said (p 74):

> "Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injury."

Defendant asserts that there was no direct evidence that the defendant was going at an excessive rate of speed, and even if excessive speed had been proved, it alone would not constitute sufficient proof of recklessness for involuntary manslaughter. Defendant asserts

287

that Officer Hoagland made no sequence test to determine if the northbound light was red simultaneously with the southbound light, and no direct evidence was offered that the defendant had in fact disregarded a traffic control signal. Defendant further asserts that the only evidence presented by the State consisted of after-the-fact testimony and pictures of the defendant's automobile after the collision, and from this circumstantial evidence they drew inferences of recklessness, and a judgment of conviction resting largely on circumstantial evidence and leaving serious doubt that the defendant was criminally negligent cannot stand. In People v. Crego, 395 Ill 451, 70 NE2d 578 (1946), it is said (p 458):

> "[W]here acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted. . . . In short, defendant's conviction cannot be sustained in the absence of proof of criminal negligence."

The State asserts that the indictment for involuntary manslaughter charged a violation of chapter 38, § 9–3(a) of the Ill Rev Stats, 1967, which reads:

> "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

The State maintains that in a conviction for involuntary manslaughter, it is only necessary to prove beyond a reasonable doubt that defendant's acts recklessly caused the death, and the State is not required to establish defendant's guilt beyond the possibility of a doubt. People v. Brown, 83 Ill App2d 411, 415, 228 NE2d 495 (1967).

The State notes that the defendant did not testify nor did he put on any witnesses to contradict the testimony of the State's witnesses. The State cites People v. Bartell, 386 Ill 483, 54 NE2d 700 (1944), where it is said (p 489):

> "Direct testimony is not required to prove the means causing the death of a deceased person. The means and manner of death may be inferred from the circumstances proved. . . . Where the facts and circumstances proved on the trial carry conviction, this court will not substitute its opinion for that of the jury simply because there is some conflict in the evidence."

■ A summary of the evidence shows that deceased's companion, Minch, saw deceased stopped at a red light and also saw an automobile, which was going pretty fast, coming up on the deceased from the rear. Officer Hoagland stated the light was still red after he heard the crash, and it was he who stopped defendant's automobile 759 feet away from the intersection, where he found decedent's motorcycle embedded in the front of the defendant's car and the body of decedent lying six feet in front of the car. The force of the impact knocked off decedent's helmet and shoes, which were found scattered around the intersection between 30 and 40 feet in various directions. Absent prejudicial trial errors, we find that there was ample and sufficient competent evidence introduced by the State to prove the defendant guilty beyond a reasonable doubt of the offenses of involuntary manslaughter and of disregarding a traffic light.

Next considered is defendant's contention that "the defendant's constitutional and statutory rights were violated when the prosecutor commented on his failure to testify." Defendant asserts that the prosecutor in the final argument of the present case repeatedly used the

words "undenied," "unexplained," "not refuted," and stated that there was "no explanation by the defense." Defendant charges that the foregoing words were personal reference pointed at the defendant and calculated to draw attention to defendant's failure to testify and, therefore, are forbidden and prejudicial error.

The record shows that during the closing argument the prosecutor said:

"It is clear evidence, this is positive evidence, it is unrefuted, it is undenied. . . . Again, look at it in the totality of the circumstances; we now have three circumstances that must be explained away. We have heard no explanation of these circumstances."

At this point defense counsel objected. The following dialogue took place:

THE COURT: "You commented initially about the evidence being uncontradicted, but it can't be done repeatedly."

DEFENSE COUNSEL: "I'd like the jury instructed in that regard."

PROSECUTOR: "We have a right to argue—"

THE COURT: "This will be denied. You may argue but I won't tolerate unnecessary repetition."

Thereafter, the prosecution continued:

". . . and based upon all these circumstances that they observed, they are uncontradicted in the evidence, they are unexplained and undenied—.

"We have a red light, a clearly visible red light, under the only testimony in this case—.

"Well, there is testimony in the record here, ladies and gentlemen, as to the condition of those traffic

lights as to whether or not they are clearly observable and that evidence is uncontradicted and—."

In these last three instances objections by defense counsel were sustained by the trial court.

Defendant's authorities on the contention that it was prejudicial error for the prosecution to comment concerning his failure to testify include Griffin v. California, 380 US 609 (1965); People v. Wollenberg, 37 Ill2d 480, 229 NE2d 490 (1967); and People v. Mills, 40 Ill2d 4, 237 NE2d 697 (1968).

█ In Griffin v. California, the prosecutor commented directly on the fact that the defendant would not take the stand and testify. There the court stated (p 615):

> "We . . . hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

In People v. Wollenberg, the prosecutor in closing argument commented that there was only one defendant in the case, and that only eight witnesses testified, six for the State and two for the defense. He read off the names of the witnesses, not naming the defendant, since he did not testify. The prosecutor then stated, "No one else testified. Let's get that straight." In reversing, the court cited Ill Rev Stats, chapter 38, ¶ 155–1, § 6, and stated (p 488):

> "That statement on its face discloses, as does the entire record, that the State's case was not in fact uncontradicted since it recites that witnesses testified in defendant's behalf. In view of this, and the clear import of the language used, it is apparent to us that the underlying purpose and the ultimate

effect of the prosecutor's remarks was to call attention to the defendant's failure to testify, thereby accomplishing by inference what could not be done expressly."

■ In People v. Mills, the court affirmed the conviction in the face of an argument by defendant that the prosecutor's comments indirectly pointed to his failure to testify. The court concluded the comments made went to an analysis of the defense presented. There were defense witnesses. However, the court stated (p 8):

> "An appropriate test in deciding whether such closing argument violated the defendant's right to remain silent under § 155–1 of the Code of Criminal Procedure was set out in Watt v. People, 126 Ill 9, 32, as whether 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?' "

The State maintains that in Illinois a prosecutor is not prohibited from referring to the testimony of his witnesses and then calling attention to the fact that such testimony has not been contradicted. The State's authorities include People v. Norman, 28 Ill2d 77, 190 NE2d 819 (1963); People v. Mills, 40 Ill2d 4; and People v. Jackson, 116 Ill App2d 86, 253 NE2d 624 (1969).

In People v. Norman, the court stated (p 81):

> "This court has held that a prosecutor could properly call the attention of the jury to the fact that the State's evidence was uncontradicted even though the circumstances were such that the defendant was the only person who could have denied the People's evidence. . . . Although the prosecutor emphasized the uncontradicted character of the People's case, there was no evidence whatever presented by the

defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of this statute."

In People v. Mills, the court stated (p 8):

"We have held it permissible, however, for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself."

In People v. Jackson, the prosecutor in his closing argument repeatedly referred to the fact that the State's case was uncontradicted or unrebutted. The defendant there asserted the same contention as the defendant in the case at bar. This court there stated (p 90):

"[W]e hold that the comments by the prosecutor in this case were not intended to focus on the defendant's silence so as to violate the Mills test. It would be a most unusual jury which would view these comments as a covert attack on the silence of the defendant rather than as an assertion that while the State's main witness had been attacked, her testimony was never contradicted by any evidence. We do not feel that these statements are the direct prosecutorial comments on the defendant's failure to testify necessary to bring a case under Griffin, particularly since the court instructed the jury that the defendant's silence raised no presumption or inference of guilt."

■ We think it is clear from Griffin v. California and the Illinois cases noted above that a prosecutor cannot directly comment on a defendant's failure to testify in a criminal trial. However, People v. Mills and earlier

293

decisions permit the prosecutor to comment on the uncontradicted nature of the State's case, even where the defendant would be the only one to testify for the defense. The Mills test was set out as "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." In Wollenberg, the comments were held violative because the court found that "the underlying purpose and the ultimate effect of the prosecutor's remarks was to call attention to the defendant's failure to testify."

The State also notes that in the instant case, as in Jackson, the court included in its instructions the following: "The court instructs the jury that the fact the defendant did not testify should not be considered by you in any way in arriving at your verdicts."

■ After examining this record in the light of the pertinent guidelines, we conclude that the foregoing comments by the State in final argument were near the danger line, and the persistence of the prosecutor in emphasizing the uncontradicted character of the State's case, as noted by the court, was improper. However, we are not persuaded that the instant comments were substantially prejudicial to defendant in view of the overwhelming proof of guilt of defendant of the two charges on which he stands convicted. We find no prejudicial error here.

Considered next is defendant's contention that "the prosecutor's closing argument was so improper and prejudicial that the defendant was denied his right to a fair trial." Defendant asserts that the prosecutor made a number of comments which were designed only to arouse and inflame the jury and were beyond the bounds of proper justice and denied defendant a fair trial, and they were meant to replace a rational approach by the jury with emotion. On this point the record shows that during closing argument the prosecutor made the follow-

ing comments: "Maybe he can get away with it in New York." Whereupon defense counsel objected, and the trial court sustained it and instructed the jury to disregard it. The prosecutor continued: "In Illinois we don't tolerate that kind of driving." Thereafter, the prosecutor made the following comment: "No, he was satisfied to go back, talk to the officer, let that poor boy, Mr. Baka, lay there and bleed." Whereupon defense counsel objected, and the trial court sustained it.

Defendant argues that a prosecutor is a public officer charged with the administration of the law, and it is his duty to see that the defendant is given a fair trial as it is the duty of the court (People v. Rongetti, 331 Ill 581, 597, 163 NE 373 (1928)), and the furtherance of justice should be his paramount objective and he should not allow this objective to be clouded by his desire to secure a conviction.

The State argues that it is proper for a prosecutor to argue or to express his opinion of the guilt of the accused where it is apparent that such opinion is based on the evidence. (People v. Gullickson, 115 Ill App2d 157, 253 NE2d 66 (1969).) The State asserts that in the instant case the remarks of the prosecutor were entirely proper and in no way prejudicial since they were supported by evidence in the record.

We think this point calls for the application of the statements made in People v. Nicholls, 42 Ill2d 91, 245 NE2d 771 (1969). There the court said (p 100):

> "We find that some of the prosecutor's remarks were improper but we do not find under the circumstances of this trial that because of them the judgment should be reversed. Considering the comments made in the light of the evidence of guilt presented by the prosecution it cannot be said they represented a material factor in the conviction and that the verdict would have been different had the comments been unsaid."

■ Although we find that some of the comments made by the prosecutor in final argument were improper in referring to the uncontradicted nature of the State's evidence and also were somewhat inflammatory, we do not believe that these remarks represented a material factor in defendant's conviction or that the verdicts would have been different had the comments been unsaid (People v. Nicholls).

In conclusion, we think the record demonstrates that the defendant was given a fair trial and that no prejudicial trial errors were committed. Therefore, in view of the overwhelming proof of guilt, we find that defendant was properly convicted of the offenses charged, and the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.