THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KASCELL JENNINGS, Defendant-Appellant.

(No. 70-102; ▇▇▇▇▇▇▇▇▇▇▇▇

Fifth District—April 18, 1973.

Frederick F. Cohn, Special Consultant to Defender Project, of Chicago, (Edward M. Genson, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a conviction of murder, armed robbery, and unlawful restraint, in the Circuit Court of St. Clair County. Although the jury recommended the death penalty, the court declined to impose it and sentenced defendant Jennings and co-defendant Hyde to terms of 99-100 years. Codefendant Hyde's conviction was affirmed in *People v. Hyde*, 1 Ill.App.3d 831, 275 N.E.2d 239.

An extended discussion of the evidence appears in the *Hyde* opinion and will not be repeated herein. However, where facts are essential to the treatment of issues raised on this appeal, they will be summarized.

Defendant argues initially that the evidence was insufficient to convict him because of the confusion, uncertainty, and contradiction of the identification witnesses. He also argues that the testimony of his alibi witnesses was more believable than that of the State's witnesses.

All of the witnesses who identified the accused were in a good position to observe and did observe defendant under conditions that lend veracity to their observations. They identified defendant in a line-up and at trial.

They asserted their positiveness and remained unshaken on cross-examination.

The defendant testified in his own behalf, denied the robbery and shooting, offered an alibi and produced witnesses in its corroboration. Isaiah Marchbanks, a long-time friend of defendant, testified he saw defendant at 1:30 A.M. on the morning of the alleged offense outside a tavern and drove him the three or four blocks to defendant's home. Defendant's father and mother testified that they saw their son come home at about 1:30 A.M., that he went to bed, that he did not get up until the next morning. Defendant's brother testified that the defendant owned a black Chevrolet convertible and that he himself owned a red Chevrolet convertible, which was inoperable on the morning of the alleged offense. James Stringfellow, another acquaintance of defendant, testified defendant owned a black convertible; but, on cross-examination, he admitted that he had tried to fix the defendant's brother's red Chevrolet on the day before the occurrence. Clifton Turner, a barber and also a long acquaintance of defendant, testified that, on the evening before the occurrence, he had given defendant a trim.

Defendant testified that he had spent the day before the alleged occurrence in a tavern and that, other than the period of time during which he received a haircut, he remained at the tavern. At about 1:30 A.M., he received a ride home from Marchbanks and remained at home until the following day. He denied having seen Hyde on that day and denied any participation in the offense.

■■ Our review of the testimony leads us to the conclusion that the guilt of the defendant was firmly grounded on sufficient evidence and that defendant's guilt was proven beyond a reasonable doubt. The evidence against defendant is even stronger than that against co-defendant Hyde. The identification evidence was positive and, even though not entirely consistent, it was convincing. The testimony of defendant's barber was significantly impeached by the testimony of Detective Alonzo Perrin with regard to a prior inconsistent statement. Under these circumstances, that the jury chose to disbelieve defendant and his alibi witnesses is unavailing to defendant as error since it is within the province of the jury to choose whom to believe or disbelieve.

■■ Defendant next argues that prejudicial error occurred when the prosecutor elicited evidence that the deceased victim was married and supporting a family and compounded the error by introducing photographs of the deceased showing some of his children on his lap and by commenting on deceased's family in final argument. The same argument was made in the *Hyde* case and we held that, since there was such strong evidence of guilt, the conviction did not result from passion or prejudice.

This position is even more tenable with regard to defendant Jennings.

■■ The defendant next argues that reversible error was committed when the State was permitted to impeach defendant's testimony by bringing to the jury's attention evidence of defendant's past convictions. This argument was also made and considered in the *Hyde* opinion. We reaffirm what we said therein. *People v. Hyde,* 1 Ill.App.3d 831, 275 N.E.2d 239, at 247-248.

■■ The defendant next argues that prejudicial error occurred when the State knowingly suppressed a police report containing evidence favorable to him. This issue was also discussed at length in the *Hyde* opinion and dismissed. However, one aspect of the argument is new. The report contains a statement of Benny Walker, a witness whom the defendant notes had stated he "could not identify the gunmen of the armed robbery". Defendant argues his testimony could have given added weight to the defense. However, as we found significant in our discussion in the *Hyde* opinion, in response to a motion for a list of witnesses, the State included Walker's name as a witness.

■■ Defendant next argues that the court erred in failing to instruct the jury as to the essential elements of the offense of murder. This issue was also considered in the *Hyde* opinion and we found that no prejudicial error had occurred. *People v. Hyde,* 1 Ill.App.3d 831, 275 N.E.2d 239 at 247.

■■ The defendant next argues that the State failed to prove the *corpus delicti* for the offense of murder in that there was no evidence to show that the person who was pronounced dead at Firman Desloge Hospital was Paul Walker. However, there was circumstantial evidence to support the jury's verdict. A number of witnesses testified that they saw the decedent after the defendants had left the area where the offense had taken place, and they described the decedent and the nature of his wound. The decedent's employer and wife testified that the decedent departed on a trip to the National City stockyards on the afternoon before the alleged incident occurred, and his wife testified she next saw him at Firmin Desloge Hospital and that he was dead. A resident at the hospital testified that a patient was referred from another hospital at about 6:30 A.M. on July 23, with what appeared to be a gunshot wound. He testified about the patient's physical appearance and the condition of the wound. Finally, he testified that the patient was pronounced dead at 11:35 A.M. and that an autopsy revealed the cause of death to be gunshot wound of the head with laceration of the brain and cerebral edema. When shown photographs of the decedent, the resident was able to testify that the photographs represented a fair likeness of the man he had treated. He also testified that the patient was the only patient he treated with

the type of wound he had described. Under the circumstances, there was sufficient evidence from which a jury could find that the individual who was shot at the scene of the occurrence was Paul Walker.

■■ The defendant next argues that his trial attorney was incompetent and that he did not adequately represent the defendant. He points to his counsel's reminding the State's Attorney to introduce certain photographs, to the admission of which his counsel then objected; his failure to submit an instruction on the elements of murder; his failure to object to prejudicial remarks during the closing argument; and his failure to object to immaterial evidence. As we noted in *People v. Hyde*, 1 Ill.App. 3d 381, 275 N.E.2d 239, at 249, "most of the alleged errors were not errors and as to the remainder it cannot be said that there was any failure or shortcoming upon the part of the attorney". This statement applies to the present case as well. The defense vigorously cross-examined the State's witnesses and thoroughly presented the defendant's witnesses.

■■ The defendant has failed to show either that his counsel was incompetent, as reflected by his manner of carrying out his duties as a trial attorney or that substantial prejudice resulted therefrom, without which the outcome would probably have been different. *People v. George*, 38 Ill.2d 165, 230 N.E.2d 851.

The defendant next argues that the trial court erred in refusing to allow the defense to recall Clifton Turner, the defendant's barber, to testify that he had received three telephone calls, the most recent call being received the evening before his testimony was offered. The caller allegedly had wanted Turner to change his testimony about when he had cut defendant's hair. When questioned by defendant's counsel, the following dialogue occurred:

"Q. You don't know who the voice was?

A. No.

Q. You are not making any inference that the State's Attorney offered you money to testify?

A. I don't know who it was. He [State's Attorney] said he called the house and the voice sounded the same."

The trial court ruled that the testimony was not relevant and had no bearing on the issue.

■ The defendant argues that the testimony was relevant in that the State's alleged attempt to coerce Turner to change his testimony indicated that the State believed its case was weak or unfounded. This reasoning, however, assumes that the caller was a representative of the State, more particularly the State's Attorney. In *People v. Nichols*, 378 Ill. 487, 38 N.E.2d 766, the Court emphasized that:

"The rule is that telephone conversations, the substance of which

are relevant and material to the issues, are competent provided the identity of the person with whom the conversation was had is established by direct evidence or facts and circumstances."

In that case, the Court reviewed the evidence and determined that there was sufficient evidence of the identity of the caller. In *People v. Turner,* 82 Ill.App.2d 10, 226 N.E.2d 667, the trial court excluded evidence of telephone calls which would have supported the accused's defense of self-defense. The appellate court affirmed the court's exclusion because the "witness was unable to lay a proper foundation for these calls". The court noted, at 672, that the recipient of the calls did not know their names or who they were. Applying the reasoning of these cases to the present case, the defendant failed to show the identity of the caller. On examination by defense counsel, Turner admitted he didn't know who had called him. Under these circumstances, the trial court properly excluded the testimony.

Defendant next argues that the trial judge's failure to instruct the jury that testimony used for impeachment purposes could not be used as substantive evidence was prejudicial error. Defendant has cited several cases where the absence of such an instruction contributed to a reversal of the lower court's decision. But in those cases, it was found by the court that the purpose of the impeachment testimony was not to attack the credibility of the respective witnesses, but rather it was an attempt by the prosecution to introduce unsworn statements made outside the presence of the defendant as testimony of defendants' participation in the crime. Thus the fact that a limiting instruction was not given was not by itself prejudicial error, but rather its absence simply aggravated the situation.

In *People v. Tate,* 30 Ill.2d 400, 197 N.E.2d 26, the Court held that the admission of a confession made by a witness charged with the identical crime as that of the defendant could not be used for the purpose of impeachment because it bore directly on the defendant's guilt or innocence and was likely to have a prejudicial effect on the minds of the jury. The Court further observed that the jury was not adequately instructed as to the limited purpose for which the impeaching evidence could be used. Since the impeachment testimony was so clearly prejudicial, the court noted that the absence of a limiting instruction informing the jury that the testimony was admissible for impeachment purposes only enhanced the possibility that the jury considered the testimony as substantive evidence. In *People v. Paradise,* 30 Ill.2d 381, 196 N.E.2d 689, the Court held that the length and repetition of the impeachment testimony of an informer, together with the fact that the jury was not instructed as to the limited purpose for which the impeaching testimony

could be used, compelled the conclusion that its effect was so prejudicial as to warrant a new trial. In that case the informer had made a prior out of court statement to the police and others that he had participated in a controlled sale of narcotics to the defendant. In *People v. Dandridge,* 30 Ill.2d 209, 256 N.E.2d 676, the Court reversed and remanded the case because it found that the purpose of the impeachment testimony of two witnesses who had been charged and found guilty of the identical offense for which the defendant was being tried was to link defendant's participation in the crime rather than attack the credibility of the witnesses. The absence of a limiting instruction aggravated the risk that the jury would take the impeaching testimony as evidence of defendant's guilt. To like effect is *People v. Svizzero,* 84 Ill.2d 251, 228 N.E.2d 604.

These cases are easily distinguishable from the present case. In each of them the impeachment testimony dealt with admissions or confessions by witnesses which directly implicated the defendants as participants in the crime. In each case, except *People v. Paradise,* the impeached witnesses had been charged with and found guilty of the identical offense for which the defendant was being tried. In *People v. Paradise,* the impeached witness was an informer. Unlike our case, it is not clear in any of the cases cited by the defendant whether a limiting instruction was ever requested. Nevertheless, in each case the court felt that a limiting instruction should have been given to offset the prejudicial effect of the prior out of court statements made by the witnesses.

■■■ In the instant situation the impeachment testimony did not deal with an admission of guilt by a witness nor did it in any way link the defendant to the crime for which he was being tried. The only purpose the impeaching testimony served was to show that the witness had made a prior inconsistent statement concerning the defendant's actions in the barber shop. The only similar characteristic connecting our case to the facts in those cases cited by the defendant is that a limiting instruction was not given to the jury concerning the applicability of the impeaching testimony. However, it is clear from the record before us that the purpose of the impeaching testimony was only to attack the credibility of the witness. There is no way in which it could be construed that his prior out of court statement could link defendant to the crime. For that reason we are dealing only with the situation where a limiting instruction was not given to advise the jury of its purpose. It is well settled that the court, *only upon request,* is required to instruct the jury of the purpose for which prior statements of witnesses were admitted. *People v. Newman,* 30 Ill.2d 419, 197 N.E.2d 12. See also, *People v. Franklin,* 74 Ill.App. 392, 220 N.E.2d 872.

Defendant next argues that the Assistant State's Attorney committed

reversible error when he expressed his own personal belief as to the guilt of the defendant. During closing argument, the Assistant State's Attorney stated, "We believe beyond a reasonable doubt the guilt of these defendants", and "This is as cold-blooded a murder as has ever existed as far as we are concerned".

■■ It is well established that it is permissible for a prosecutor to argue or express his opinion of the guilt of the accused where it is apparent that such opinion is based on the evidence. (*People v. Jackson*, 35 Ill.2d 162, 171, 220 N.E.2d 229; *People v. Robinson*, 106 Ill.App.2d 78, 246 N.E.2d 15.) In *People v. Hoffman*, 399 Ill. 57, 77 N.E.2d 195, cited by defendant, our Supreme Court held it improper for a State's Attorney to express his own opinion or belief about the defendant's guilt *except as that* opinion is based on the evidence. In the present case, the opinion, if it can be so construed, was based upon the evidence, unlike the facts presented in *People v. Fuerback*, 66 Ill.App.2d 452, 214 N.E.2d 330.

Furthermore, even if the remarks could be viewed as improper, the defendant has failed to show that the verdict would have been different had the comments not been made. *People v. Nicholls*, 42 Ill.2d 91, 245 N.E.2d; *People v. Acker*, 127 Ill.App.2d 283, 262 N.E.2d 247.

■■ The defendant next argues that the indictment charging murder was defective in that it alleged "intent to kill", which defendant argues does not enter into the definition of murder, and in that it failed to allege "knowledge", which is an element of the crime. The defendant relies on authorities taken entirely out of context. The indictment charged that defendant, "with intent to kill Paul Walker, shot and killed the said Paul Walker with a gun without legal justification". The indictment contains the language of Ill. Rev. Stat. Ch. 38, sec. 9—1(a)(1) and is fully descriptive of the offense. It advised the defendant with reasonable certainty of the precise offense charged, including its essential elements, and adequately notified defendant of the nature and cause of accusation against him. *People v. Shannon*, 94 Ill.App.2d 110, 236 N.E.2d 369.

The defendant finally argues that, since all counts of which defendant was found guilty were based upon the same conduct, the imposition of more than one sentence was improper and also that the sentence should be reduced.

The jury found defendant guilty of murder, unlawful restraint and three counts of armed robbery. In the sentencing proceeding, the court stated: "The Court sentences you to the penitentiary and fixes your minimum years at 99 years and your maximum at 100 years. Mittimus to issue * * *. The same sentence will apply to all three counts and will run concurrently". The Court's order provides: "Defendants are hereby sentenced to a term of indeterminate years * * * and [the

142

court] fixes the minimum number of years at 99 years and the maximum number of years at 100 years". The mittimus refers only to the crime of murder and specifies a term of not less than 99 years, nor more than 100 years. Under the circumstances, it appears that no more than one sentence was imposed and, therefore, defendant's argument is not appropriate.

Unlike the appeal of co-defendant Hyde, this appeal is being concluded after the effective date of the Uniform Code of Corrections. (Ch. 38, sec. 1001—1—1, Ill. Rev. Stat.) See *People v. Shadowens*, 10 Ill. App.3d 450, and *People v. Hendrickson*, No. 72-76, both filed March 1973.

■■ We do not consider a sentence of 99 to 100 years an indeterminate sentence, nor one which is envisioned by either the general tenor of the Code, and particularly sec. 1003—3—3 thereof into which Ch. 23, sec. 2519, Ill. Rev. Stat. 1969, was incorporated. Both the old and new provisions were designed to give parole authorities an opportunity to appraise and give effect to the possibility of rehabilitation.

■■ This record contains sufficient information concerning defendant's past record and the nature of circumstances of the offense that we need not remand for modification of the sentence. Accordingly we reduce the minimum sentence to 20 years, and as so modified affirm.

Judgment affirmed as modified.

G. MORAN, P. J., and JONES, J., concur.