(No. 37754. )

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, v. RICHARD FARNSLEY, Defendant in Error.

*Opinion filed Jan. 26, 1973.—Rehearing denied March 27, 1973.*

PAUL BRADLEY, of Illinois Defender Project, of Elgin (RALPH RUEBNER, Assistant District Defender and JAMES R. BRODIE, Senior Law Student, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT J. NEELY, State's Attorney, of Metropolis (JAMES B. ZAGEL and THOMAS E. HOLUM, Assistant Attorneys General, and JOHN A. O'MALLEY, Senior Law Student, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Richard Farnsley, was convicted of murder following a jury trial in the circuit court of Massac County and was sentenced to the penitentiary for a term of 40 years. He initially had filed a writ of error to this court, and thereafter sought post-conviction relief in the Massac County circuit court, which relief was denied without an evidentiary hearing. Both matters have been consolidated for purposes of decision.

Deceased, Harlan Reynolds, was the owner of a tavern in Brookport, Illinois. Shortly after midnight on January 26, 1958, Reynolds closed his establishment. Robert Montgomery, an acquaintance, testified that at this time he talked briefly to Reynolds outside the tavern and noticed that he was carrying a revolver and a box. Reynolds departed for his home, which was located a short distance from the tavern, and Montgomery stated that he then heard several explosions and a scream. He immediately went to Reynolds' house, where he saw deceased's body. He placed the time of this occurrence at about 12:35 A.M.

Deceased's wife testified that she was awakened by

her husband's call for help and a gunshot. She went outside and discovered him lying on the porch near an unopened cash box which contained currency and checks totaling about $750. She further claimed that she and her husband had known defendant for several years and that he at one time had operated a pool hall at the rear of the tavern.

Mitchell McCandless, deceased's neighbor, testified that he noticed a vehicle, which he identified as a Packard, near his home that night. He later heard five shots and saw three unidentified occupants driving away in the car.

Byron Lents and Woodrow Arnold were the crucial State witnesses. Both had previously pleaded guilty to the murder and were awaiting sentencing at the time of defendant's trial. Lents testified that two weeks prior to the murder defendant asked him if he was interested in making some money and Lents said that he was. Defendant then told him to procure a car. However, Lents was apparently unable to do so. He was also unable to obtain an automobile a week later at defendant's request.

Finally, on January 25, 1958, Lents stated that defendant told him that he had arranged for the use of a vehicle. He told Lents to meet him that evening at the Sportsman's bar, which was located in Paducah, Kentucky. Lents testified that he arrived at the bar with a female companion where he met defendant and Marjorie Jones. Defendant then told him that Arnold, a bartender in this tavern, was going to drive the car. Lents, after leaving his companion, met Arnold and they picked up defendant at his apartment, which was located in Paducah, and then drove to deceased's house. There, Lents claimed, he took the gun which Arnold had brought and hid behind a hedge in deceased's yard as defendant had suggested. As Reynolds approached, Lents stepped from his concealment and shouted. Reynolds immediately turned and shot twice, wounding Lents. Lents said he then fired three shots at Reynolds and fled. He denied having a knife or similar

object in his possession at this time. He further claimed that after the shooting he was taken to his sister's house by Arnold and defendant. A relative then called the police and Lents was arrested and taken to a hospital. Lents denied that any promises had been made to him by the prosecution.

Arnold testified that defendant asked him if he wished to make some "easy money" by robbing Reynolds. Arnold agreed to provide his automobile (Packard) and a weapon, which was owned by his employer. His testimony concerning the events surrounding the murder is substantially identical to that of Lents. In addition he testified that after the shooting he threw the weapon into the Ohio River on their return to Paducah. He also stated that he had not received any prosecution promises in return for his plea of guilty.

Marjorie Jones testified that she went to the Sportsman's bar on the evening of the murder and saw Arnold and Lents. She stated that defendant, who was also present, did not talk to these two men while she was there. This witness further claimed that she and defendant left the bar at about 11:30 P.M. and went to his apartment. Approximately fifteen minutes after their arrival, she said, defendant excused himself, stating that he would return in thirty minutes. She testified that during this interval she went to sleep, but was awakened by defendant when the police arrived several hours later. She admitted that she had consumed many drinks that evening.

Defendant testified in his own behalf and denied any complicity in the crime. He said that on the evening of the murder he left the Sportsman's bar with Marjorie Jones and went to his apartment, where they proceeded to drink. Defendant stated that after they had exhausted the supply of liquor he left the apartment about 12:30 A.M. and went to his car to obtain another bottle of liquor and his shaving kit. He said that as he was standing by his car several youths greeted him. When he returned to the apartment

about 15 minutes later, he observed that Marjorie Jones, whom he described as being intoxicated, was asleep. After reading several newspapers he also fell asleep. He further testified that later that morning he saw the police arrive in front of his residence and, although they did not immediately come to his apartment, he dressed and awakened Miss Jones. On cross-examination defendant modified the time sequence to which he had previously testified, claiming that he returned from his car at approximately 11:50 P.M.

Martha Cole, a friend of defendant, testified that she had been in a club that evening which closed at midnight and she left about 12:15 A.M. As she was driving home, she passed defendant's apartment about 12:30 A.M. and saw him standing near his car but did not stop to talk to him. On cross-examination she admitted that she was not wearing a watch and her vehicle did not have a clock. She further admitted that she had been drinking that evening.

A number of issues are raised. Defendant first contends that he was denied a fair trial by the participation of a special prosecutor who, he claims, had not been properly appointed and who was compensated by the estate of the victim. Fletcher Lewis was retained by the estate and minimally participated at trial. Defendant relies on the absence of any record of Lewis's appointment by the court, and concludes that he was improperly appointed by the State's Attorney. We do not agree with this conclusion. Defendant filed written objections to Lewis's appearance, which objections were considered at a pretrial hearing. While there is no transcript of the hearing, we must conclude that Lewis's appointment was approved by the court, as is evidenced by his subsequent participation. Nor can we agree that the fact that there was a privately retained counsel "added an element of personal vengeance" that denied defendant a fair trial. It has long been held that a trial court is vested with discretion in permitting privately retained counsel to assist a State's

Attorney in the trial of a criminal case. (*People v. Husband, 4 Ill.2d 451.*) In *Hayner v. People, 213 Ill. 142, 147-148,* a duty was imposed upon the trial court to prevent oppression of the accused and to insure that such appointment is "not being used to gratify malice or personal ends." Defendant does not demonstrate, nor does the record disclose, that the participation of a special prosecutor in any way deprived him of a fair trial.

He next complains that a prosecution witness, Marie Arnold, the wife of Woodrow Arnold, should not have been allowed to testify after she violated a court order excluding witnesses. It is his contention that her testimony was substantially similar to that of Byron Lents, which was adduced the previous day, and the trial court was therefore under a strict duty to inquire whether she had overheard this testimony. At a hearing outside the presence of the jury this witness, who had not yet been placed under oath, denied that she was present while Lents was testifying.

As defendant concedes, it is within the sound discretion of the trial court to permit one to testify who has violated an order excluding witnesses. (*People v. Bridgeforth, 51 Ill.2d 52.*) An examination of her testimony indicates that she merely corroborated the fact that defendant was in the Sportsman's bar prior to the murder and that her husband had a conversation with him that evening, although she did not know its substance. The remainder of her testimony relates only to the fact that her husband and Lents drove her home that evening and that the police arrived the following morning to arrest him. We find that under these circumstances further inquiry as to her presence at trial the previous day was unnecessary.

Defendant further asserts he was not proved guilty beyond a reasonable doubt. He contends that the uncorroborated testimony of two alleged accomplices is insufficient to establish his guilt. However, such testimony, even where subject to infirmities such as promises of leniency, may be sufficient. The test remains that the trier of fact

must be satisfied beyond a reasonable doubt that the accomplices' testimony is true, and, once established, the decision will not be reversed unless that quantum of proof is lacking. (See *People v. Coleman, 49 Ill.2d 565; People v. Ross, 41 Ill.2d 445.*) After examination of the record, we find that the evidence presented clearly sustained the verdict.

He next argues that the cause of death that was stated in the indictment, *i.e.,* gunshot wounds, was not proved beyond a reasonable doubt. He bases this contention on the unexplained presence of an incised wound in the left anterior chest of deceased. A medical report containing the names of Dr. Curtis Bippert and Dr. Burton Haley described this wound as having been caused by stabbing. No autopsy, however, was performed.

He initially maintains that the State's failure to call Dr. Haley raises the inference that his testimony as to the nature of deceased's wounds would have been unfavorable. The State, however, is not obligated to call every witness who might testify concerning evidence of the crime. (See *People v. Scott, 38 Ill.2d 302; People v. Nowak, 45 Ill.2d 158.*) The hospital report containing Dr. Haley's name was made available to the defense prior to trial, and presumably he might have been called by the defendant. Under the circumstances we do not believe that the prosecution's failure to call Dr. Haley gave rise to a negative inference.

The prosecution in a case of criminal homicide must establish the *corpus delicti* beyond a reasonable doubt, the elements being the proof of death and proof of a criminal agency causing death. (*People v. Gendron, 41 Ill.2d 351, 360.*) Dr. Bippert was called as a defense witness and testified that he had examined deceased and determined that the body had three wounds. He testified that the wounds found in the lower abdomen and back were caused by bullets. He further detracted from the reliability of the statement contained in the medical report concerning the nature of the incised wound by admitting

that he could not definitely conclude what caused it. He said that it may have been caused by a bullet exiting from the body, although "there was a remote possibility that it could have been something else." He further testified that any of the three wounds might have caused death.

In view of this testimony, the fact that other witnesses testified that several shots were fired during the commission of the crime, and that Lents denied that he possessed an instrument capable of inflicting an incised wound, we believe that the cause of death as charged in the indictment has been sufficiently established. We therefore need not consider whether the testimony of the county coroner and three police officials concerning their observations of the nature of the wounds was proper, for the cause of death was proved by other testimony. Similarly, defendant's contention that the trial court erred in failing to allow pretrial production of photographs of the body, which were introduced at trial, is without merit, because his argument is predicated on the basis that one of these pictures would have established that the disputed chest wound was caused by stabbing.

Defendant next challenges the propriety of three given instructions. We find that any error in this regard was harmless beyond a reasonable doubt and that the jury's verdict would not have been otherwise, even absent the alleged errors. See *People v. Perry, 52 Ill.2d 156; People v. Nicholls, 42 Ill.2d 91; People v. Pearson, 19 Ill.2d 609.*

He argues that the instruction relative to the weight to be given to his testimony was improper because it intimated that his testimony was fabricated and not worthy of belief. He attaches significance to that portion of the instruction which states: "the jury are not bound to believe his [defendant's] testimony." However, he overlooks the preceding portion of the instruction, which stated that the jury was bound to consider his testimony in a fair and impartial manner and to subject his testimony to the same tests as those applied to other witnesses. It is

settled that an instruction that directs the jury to consider the interest of the defendant in determination of his credibility as a witness is permissible. (See *People v. Barkas, 255 Ill. 516, 526.*) The instruction, when viewed in its entirety, did not disparage defendant's testimony nor imply that it was a fabrication.

Defendant's final assertions of error are addressed to the dismissal of his post-conviction petition. There he claimed that items of evidence favorable to him—namely a Kentucky death certificate which listed the cause of death as gunshot and stab wounds, and the photographs of deceased—were concealed by the prosecutor. Inspection of the death certificate reveals that the information contained therein was provided by one Thurman Reynolds, presumably the deceased's son, who testified at trial that he did not examine his father's body to discover the nature of the wounds. It is readily apparent that this document would have been subject to certain evidentiary defects precluding its admissibility. The relevancy of the photographs to which he alludes has been previously considered. We find no merit to this contention.

Defendant also claimed that false and perjured testimony was introduced at his trial. He averred that examination of the trial transcript would establish that Arnold testified falsely as to the circumstances surrounding the disposal of the murder weapon. Moreover, he said that he would call witnesses to support this contention. However, a review of the record does not substantiate his charge. And, as we have said, "a petitioner should, in his petition or in accompanying affidavits, 'identify with reasonable certainty the source from which the alleged evidence of perjury would be forthcoming, that it was available, and of what it would consist ***.' [Citation.]" (*People v. Gendron, 41 Ill.2d 518, 519.*) Defendant's allegations fail to meet this test.

For a similar reason, we must reject defendant's conclusional allegations that Arnold and Lents perjured

themselves when they denied that no offer of leniency had been made in return for their testimony. This determination is further supported by a prosecution statement contained in the record, which indicates that these accomplices were sentenced to thirty years imprisonment.

He further maintained that his two court-appointed attorneys were incompetent, for they failed to introduce the Kentucky death certificate and cross-examine Lents and Arnold as to any prior criminal convictions. The admissibility of the death certificate has been previously discussed. Moreover, counsel did attempt to question Arnold as to his prior criminal offenses. After study of the record, we find that defendant was ably represented.

Defendant also argued that while the jury was sequestered it was subjected to newspaper, television and radio accounts of the trial which inflamed and prejudiced its determination. The only news article concerning the trial, which has been brought to our attention, was published several days before the jury began its deliberation. This article represented a fair account of the proceedings and was not inflammatory. Moreover, the State, in an effort to refute defendant's conclusional contention, submitted the affidavit of the bailiff who was in charge of the jury. The contents of this document clearly discredited the assertion that the jurors were subjected to biased radio or television broadcasts.

However, he next contends that the trial court erroneously considered the State's answer and supporting affidavits to his post-conviction petition because they were filed beyond the time provided by statute. He attempts to justify this position by claiming that the statute establishing the filing procedure is mandatory. (Ill. Rev. Stat. 1963, ch. 38, par. 830 (now par. 122–5).) He does not cite, nor do we find, any authority for the proposition that a valid disposition of a post-conviction petition will be reversed simply because the State may have delayed in filing its

answer, especially, as here, where there is no indication that defendant was prejudiced by the delay.

In summary, " 'Dismissal of nonmeritorious petitions on motion is certainly within the contemplation of the [Post-Conviction Hearing] Act ***.' Before a hearing is required, a petitioner must make a 'substantial showing of a violation of constitutional rights' ***." (*People v. Curtis, 48 Ill.2d 25, 27.*) The burden is on the defendant to clearly set forth in what respect his constitutional rights were violated and support the allegations with affidavits, records, or other evidence which establishes a violation of these rights. Absent such a showing, a petition may be dismissed without a hearing. (*People v. Pierce, 48 Ill.2d 48, 50.*) Having examined the petition we find that defendant did not satisfy this burden.

Finally, defendant maintains that in the post-conviction proceedings the trial court improperly considered a coroner's verdict in order to determine if the cause of death was established. This document was attached as an exhibit to the State's answer. Proof of cause of death necessarily requires an evidentiary evaluation, and, in post-conviction proceedings, questions as to the sufficiency of the evidence may not be raised. (*People v. Dunn, 52 Ill.2d 400.*) Defendant's contention was therefore inappropriately presented, and the trial court's disposition of this matter adversely to him was correct.

For these reasons the judgments of the circuit court of Massac County are affirmed.

*Judgments affirmed.*