THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLEN DAVIS, Defendant-Appellant.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY D. QUINN, Defendant-Appellant.

(Nos. 72-228-9 cons.;

Second District—June 5, 1974.

Ralph Ruebner and Adam Lutynski, both of Office of the State Appellate Defender, of Elgin, for appellants.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Charles D. Sheehy, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A three-count indictment charged defendants with one count of burglary and two counts of theft of property valued in excess of $150. At the close of the State's case-in-chief, the court directed a verdict in favor of defendants on the two counts of theft. Trial proceeded on the burglary count and a jury found the defendants guilty. Davis was sentenced to 4 years' probation, the first year to be served at the Illinois State Farm at Vandalia. Quinn was sentenced to 3 years' probation, the first 8 months to be served at the Illinois State Farm in Vandalia. We have consolidated the defendants' separate appeals for the purpose of review.

Defendants contend that they were not proven guilty beyond a reasonable doubt, that the court committed reversible error by explaining to

the jury the reason for the directed verdict, and that it was error for the court to instruct the jury on theft.

At approximately 10 P.M. on October 22, 1971, the janitor of the Zion-Benton High School made his routine check of the band room observing that the windows were closed, the doors locked, the large doors at the end of the hall chained, and the band's drums in the room.

On the morning of October 23, 1971, an Officer Guthrie and another made security rounds in their squad car. They approached the intersection of 22d Street and Bethesda Avenue (the area of the high school) at approximately 2:30 A.M. and observed 3 individuals carrying large objects in the school parking lot. The lot was well lit. Guthrie immediately recognized the two defendants but not the third individual whom he described as a white male, 5′ 10″, 145 to 150 pounds and of slender build. When the third party pointed in Guthrie's direction, all three dropped the objects they were carrying and ran. The two defendants were apprehended immediately and taken to the police station in separate cars. The third individual escaped and at the time of trial had not been apprehended.

Shortly after apprehending the two, the janitor and Guthrie entered the band room, observed that a window was open and that the drums were missing. The room's outside exit door had a breaker bar; when closed and locked this door could be opened only from the inside. The window was described as being 40″ long, 14″ high and of the type which tilts in and down to open.

The defendants were separately interrogated at the police station. Davis stated that, after visiting friends, he and Quinn ran through the parking lot enroute to the Davis house, that they saw no one, neither did they see the drums. (At trial, Davis testified that he had not entered the school on October 23, 1971, at 2:30 A.M., and that he and Quinn had left their friend's residence at approximately 2 A.M.)

During interrogation (and at trial) Quinn stated that he and Davis had visited with friends until 2 or 2:15 A.M., stopped at another friend's residence for 5 or 10 minutes and were passing through the parking lot enroute to Davis' house when they observed a white male, 17 or 18 years old, of slight build, approximately 6′ tall, 140 to 160 pounds, carrying a set of drums. He asked the defendants for assistance, As they began to help him, he shouted, "Police!", dropped the drums he was carrying and ran. Quinn testified that because of the man's behavior the defendants also dropped the drums they were carrying and ran.

The officer substantiated the fact that the defendants were traveling in the direction of Davis' house and that to reach such destination it was shorter to cut through the parking lot than to go around the block.

The defendants contend that they were not proven guilty beyond a reasonable doubt for three reasons: under the facts disclosed, they did not have time to commit the burglary, the window opening was too small to allow entry, and the State failed to call all available witnesses.

As to the element of time, defendants contend that according to their own unrebutted evidence and the fact that they had been visiting 1½ miles from the scene of the crime, it would have been physically impossible for them to have reached the school and committed a burglary prior to 2:30 A.M. when they were observed by the police. This theory is raised for the first time in this court. Nevertheless, were we to accept the argument, we would be holding that as a general rule of law the State must accept the defendants' facts as true and thereafter prove how the crime could have been committed within that given set of facts. Defendants' argument is without merit. In most trials, both inculpatory and exculpatory evidence is presented and in reaching a verdict it is the province of the jury to weigh the evidence and the credibility of the witnesses. (*People v. Harris*, 53 Ill.2d 83, 88 (1972).) This court must determine whether the evidence was sufficient to support the verdict. Here, testimony established that the defendants were observed in the immediate vicinity of a burglary, at the specific time of that burglary, with the stolen property in their possession. This testimony was neither impeached nor discredited. Quoting in part from an earlier decision (*People v. Hawkins*, 27 Ill.2d 339, 341 (1963)), the Illinois Supreme Court, in *People v. Stock*, 56 Ill.2d 461, 475 (1974), stated:

> " 'It is well established that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the trier of fact a reasonable doubt as to his guilt.' This language supports the conclusion that if a defendant's story is not believed by the trier of fact, it is to be considered to be unexplained. A defendant may not defeat the inference by the mere fact of raising any explanation."

Defendants further allege that the State's theory as to entry is incredible and creates another reasonable doubt as to their guilt. The State theorized that initial entry was accomplished through the described window and based such theory on the testimony of the janitor who had observed the window closed prior to the burglary but open thereafter. The janitor also testified that when opened, the window divided the aperture in half. An investigating officer who measured the window testified that its dimensions were 40" x 14" and the arresting officer estimated that there was approximately a 12" clearance when the window

was open. There was no direct evidence that it was possible to crawl through the window; neither was there evidence of it being impossible. Entry was a question of fact for the jury to determine. The fact that the window was observed closed prior to the burglary and open thereafter is unrebutted circumstantial evidence indicating that this was the point of entry. Circumstantial evidence concerning the point of entry is sufficient to establish this element of the crime of burglary. (*People v. Reeves,* 360 Ill. 55, 62-63 (1935).) We find the evidence of entry sufficient to sustain the jury's verdict.

■■■ It is argued that the State should have called the defendants' friends to testify as to the time of their departure, that someone should have been called to attest to the fact that a grown man could crawl through the open window, and that all other building maintenance personnel should have been called to ascertain that they admitted no one into the building. The failure to call these witnesses, defendants maintain, supports the contention that they were not proven guilty beyond a reasonable doubt. This argument tends toward the absurd. The State's burden is not to prove the guilt of the accused beyond the realm of uncertainty but beyond a reasonable doubt. The defendants were free to call any witness or to produce any evidence in rebuttal of the State's prima facie case. The State is under no obligation to call all available witnesses, nor can there be a presumption that the testimony of any uncalled witnesses would be unfavorable to the State. (*People v. Jones,* 30 Ill.2d 186, 190 (1964).) On the other hand, the State, by failing to call a witness, must accept the risk of any possible negative inference being drawn from their absence. (*People v. Scott,* 38 Ill.2d 302, 306 (1967).) As previously noted, sufficient evidence was presented to support the convictions beyond a reasonable doubt.

Defendants assert that it was error for the trial court to explain its reasons for a directed verdict in that such explanation implied to the jury that the defendants were guilty of committing a theft.

At the close of the State's case-in-chief, the defendants (outside the presence of the jury) moved for a directed verdict on all three counts. The court granted the motion as to the theft counts but denied the motion for a directed verdict on the burglary count. Thereafter, the court stated to the jury:

> "* * * Counts II and III of the indictment have charged each defendant with, and I quote 'theft in excess of $150,' and it has been held by the Court as a matter of law that this charge which I have just quoted has not been sufficiently established or proven by the State as to the fair market value of the subject matter of this incident, therefore, these two—."

The court was interrupted, defendants approached the bench and moved

for a mistrial. After a conference in camera, the motion was denied and the judge addressed the jury to complete his explanation of the dismissal of counts II and III. Defendants maintain that by stating that the theft counts were dismissed because the value of the property was not proven, the court implied its belief that defendants had in fact committed a theft. They argue that the jury was influenced and the defendants prejudiced by such implication because intent to commit a theft was a necessary element in finding defendants guilty of burglary.

The Code of Criminal Procedure provides for the direction of a verdict when the evidence is insufficient to support a finding of guilt. A not guilty finding may be made either by the court or by the jury on direction from the court. (Ill. Rev. Stat. 1971, ch. 38, § 115—4 (k).) In *People v. Lomax*, 126 Ill.App.2d 156, 163-64 (1970), two defendants were charged with the crime of murder and at the close of the State's case both moved for a directed verdict in camera. The trial court denied the motion as to Lomax and granted the motion as to Clemons. Thereafter, in the presence of the jury, the trial court stated that there was insufficient evidence against Clemons, directed them to there find a verdict of not guilty, but stated that the case would proceed against Lomax. On appeal it was held that the court's method of directing a verdict was within the statute and therefore unobjectionable. Similarly, we find that in the case at bar the trial court did not overstep its statutory authority by noting the legal reason for directing the verdict. See also *People v. Cannon*, 49 Ill.2d 162, 166 (1971); *People v. McFadden*, 107 Ill.App.2d 132, 137-43 (1969).

■■ Defendants contend that the giving of an instruction defining the crime of theft compounded the error of the explanation for the directed verdict. The instruction complained of is I.P.I.-Criminal 13.01; it was used in conjunction with I.P.I.-Criminal 14.05 and 14.06. Having found no error in the manner in which the court directed the verdict, we must consider whether the giving of the instruction was otherwise erroneous. The burglary count of the indictment alleged that defendants entered the building with intent to commit a theft. An instruction defining the crime of theft in a burglary case need not be given (*People v. Browry*, 8 Ill.App.3d 599, 604 (1972)) but we do not find it to be error for the court to deliver a definition of a term used in the statute (as an element of the crime), in the indictment (charging the crime) and in other instructions given to the jury. *People v. McClure*, 93 Ill.App.2d 450, 459 (1968).

The judgments in both cases are affirmed.

Judgments affirmed.

SEIDENFELD and RECHENMACHER, JJ., concur.