THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL BOB *et al.*, Defendants-Appellants.

First District (5th Division) No. 61189

Opinion filed February 13, 1976.

James R. Streicker and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendants were convicted of armed robbery and sentenced to 4 to 12 years' imprisonment. On appeal, they contend that: (1) their counsel's motion for a continuance should have been granted despite their demand for an immediate trial, (2) a shotgun allegedly used in the robbery was erroneously admitted into evidence, and (3) they were not proved guilty beyond a reasonable doubt.

Defendants were arrested for the armed robbery of a Shop-Rite grocery store at 1981 West 111th Street on June 14, 1973. The record shows that they agreed to a continuance on July 31, 1973. On November 20, 1973, when their case came on for trial, their counsel indicated that, although defendants demanded an immediate trial, he desired to file a motion to suppress their identifications and certain physical evidence, a motion to quash their arrests, and a motion for discharge under the Four Term Act. Thereupon, the trial judge repeated the motions to defendants and advised them that, while they controlled their own defense, it was generally more prudent to heed their counsel's advice. After these admonitions, all three defendants stated that they wished to proceed to trial immediately. Thereupon, the trial judge denied defense counsel's motions. Defense counsel then requested a continuance which the trial judge denied after again verifying from defendants that they desired to proceed to trial.

The following pertinent evidence was adduced at trial.

*For the State.*

Kenneth Lamparter

He is part owner of the Shop-Rite grocery store at 1981 West 111th Street. On June 14, 1973, at approximately 11:45 a.m. he saw the defendants enter and walk through the store and then leave without purchasing any groceries. One of the defendants was wearing a long black coat. At noon, Margaret Curtis, a cashier, began work with a bank of four five-dollar bills and 25 one-dollar bills, plus some loose change.

Shortly thereafter, the defendants re-entered the store. Mack Jones pointed a shotgun at him and said, "step back or I'll blow your head out." Woody Williams took the cashier to the rear of the store. Michael Bob stepped behind the cash register and withdrew the money therein. The defendants then left the store and headed towards the east. At 2 p.m. he identified the defendants in a lineup at the police station. He identified a shotgun as the same weapon used in the robbery by Mack Jones.

On cross-examination, he admitted that none of the three robbers had a mustache or a beard. He recalled describing the three robbers to the police.

*Dennis Hughes*

He is a Chicago policeman with six years' service. On June 14, 1973, at approximately noon, he responded to a radio call regarding an armed robbery. While enroute, he observed two parked buses in a loading zone at Vincennes and Chelsea Place (11050 South) approximately five blocks east of the grocery store. Defendants were standing at the rear of the second bus. He exited his vehicle and apprehended the defendants at the first bus. He recovered the hand grip of a shotgun from Mack Jones's waistband. The stock and the barrel of the shotgun were under the second bus. He also recovered $49 from Michael Bob in denominations of four five-dollar bills and 29 one-dollar bills.

On cross-examination, he admitted that his original police report did not indicate that he had recovered the hand grip from Mack Jones.

When recalled he testified that the shotgun he recovered bore serial number 697976. His original police report included that same number although at one point in a duplicate copy he erroneously hand copied the number as 69791.

*For Defendants.*

*Donald Long*

He is an investigator for the Chicago Police Department. He assisted in the arrest of the defendants. He did not observe Officer Hughes conduct the search of Mack Jones. He recalled that Hughes said that Hughes recovered a full-length shotgun from under Jones's coat.

*Michael Bob on his own behalf*

On June 14, 1973, he was with Mack Jones and Woody Williams at the apartment of Miss Goldie Moore near 53rd and State Street. They left for Morgan Park High School between 9 a.m. and 10 a.m. and arrived at 110th and Vincennes at approximately noon. As he was leaving the bus the police apprehended him. The police took $3.17 and a watch from his person. He denied robbing Kenneth Lamparter or having $49 on his person when apprehended.

*Woody Williams on his own behalf*

He denied robbing Kenneth Lamparter. When arrested with his co-defendants he had $8.45 on his person. On June 14, 1973, he had a mustache.

On cross-examination, he admitted that he calls even a small amount of hair over his lip a mustache. Mack Jones did not throw a portion of the shotgun under the bus.

*Mack Jones on his own behalf*

The grocery store is approximately four blocks north of his new home. He did not have a shotgun with him on June 14, 1973, nor did he rob Kenneth Lamparter. The police took nine dollars and some change from his person. He had a mustache on June 14, 1973.

On cross-examination, he admitted wearing a long black coat that day. On redirect, he stated that he could not hold a shotgun because he had been double-jointed since birth as a result of which he could not turn his palms in toward his body. However, on re-cross-examination, he admitted that he was able to hold the court microphone in his hand. His mustache was in the same condition as it had been at the time of his arrest.

It was also stipulated that if Brenda Anderson, Mack Jones's sister, was called she would testify that the condition of Jones's hands was substantially as he had so testified.

OPINION

■■ Defendants first contend that their counsel's motion for a continuance should have been granted despite their demand for an immediate trial. The trial judge took great care to explain defense counsel's proposed motions and to insure that all three defendants understood the wisdom of following their counsel's advice. Nonetheless, defendants unequivocally demanded an immediate trial. The record further indicates that defendants' counsel was prepared for trial and that defendants were not denied the effective representation of counsel once they proceeded to trial. It is well settled in Illinois that a trial court may refuse to grant a continuance when the defendant demands an immediate trial. (*People v. Lewis*, 60 Ill. 2d 152, 330 N.E.2d 857; *People v. Williams*, 59 Ill. 2d 402, 320 N.E.2d 849.) On the basis of the record before us, we believe that the trial court correctly denied defense counsel's motion and, therefore, reject defendants' initial contention.

■■ Defendants next contend that the shotgun allegedly used in the robbery was erroneously admitted into evidence. They argue that the State failed to establish a chain of custody of the weapon from the date of its recovery until the day of trial. The foundation for the intro-

duction of real evidence may be laid either through its identification by a witness or through the establishment of a chain of possession. (*People v. Greer*, 28 Ill. 2d 107, 190 N.E.2d 742.) Here, Officer Hughes made an in-court identification of the shotgun as the weapon he recovered at the bus terminal. He testified that the serial number on the barrel of the shotgun matched the serial number of the gun he inventoried in his police report immediately following the arrests. Similarly, Kenneth Lamparter testified that although he was not familiar with shotguns he recognized this particular shotgun because it appeared to be very old and unusual looking. In light of the two positive identifications of the shotgun, we believe that the trial court correctly admitted the shotgun into evidence.

■■ Defendants finally contend that they were not proved guilty beyond a reasonable doubt. When a jury trial is waived, the credibility of the witnesses and the weight to be given their testimony are for the trial court which saw and heard the witnesses testify. (*People v. Pagan*, 52 Ill. 2d 525, 288 N.E.2d 102.) The findings of the trial court will be reversed on appeal only when the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People v. Morehead*, 45 Ill. 2d 326, 259 N.E.2d 8, *cert. denied*, 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251.) Defendants argue that Lamparter's failure to notice that two of the defendants sported sparse mustaches and his inability to identify the policeman who transported him to the stationhouse discredit his ability to identify the defendants as the robbers. We believe that the sparseness of defendants' facial hair makes Lamparter's testimony all the more reasonable. Moreover, after carefully reviewing the photographic evidence in the record we cannot say that Lamparter's identification is so unsatisfactory that it creates a reasonable doubt as to his testimony. Nor can we say that his confusion on the collateral matter of which policeman drove to the lineup casts a reasonable doubt on his ability to identify the defendants.

Defendants also argue that the State's failure to call Margaret Curtis, the grocery store's cashier, creates a strong presumption that her testimony would have differed from Lamparter's testimony. The State is not required to call all available witnesses nor will an unfavorable presumption arise from its decision not to do so. (*People v. Farnsley*, 53 Ill. 2d 537; 293 N.E.2d 600; *People v. Davis*, 19 Ill. App. 3d 848, 312 N.E.2d 343.) Here, Lamparter's identification is clear and unequivocal. Officer Hughes's testimony placed the defendants in the vicinity of the crime with both the weapon used in the robbery and the proceeds of the robbery in the exact denominations taken. Any discrepancies between his police reports are so minor that they fail to impugn his credibility, much

less raise a reasonable doubt. Defendants had ample time to investigate and discover the importance of the cashier's observations to their defense. In light of the overwhelming evidence of their guilt, we will not speculate on whether her testimony would have favored defendants or simply added more cumulative evidence of defendants' guilt.

For the reasons given above, we affirm the judgments of the circuit court of Cook County.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.