(No. 48136.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES RANSOM, a/k/a Melvin Ransom, *et al.*— (James Ransom, Appellee.)

*Opinion filed December 3, 1976.*

William J. Scott, Attorney General, of Springfield, and Robert H. Rice, State's Attorney, of Belleville (James B. Zagel, Jayne A. Carr, and Raymond McKoski, Assistant Attorneys General, and Bruce D. Irish and Raymond F. Buckley, Jr., of Illinois State's Attorneys Association Statewide Appellate Assistance Service, of Mount Vernon, of counsel), for the People.

Michael J. Rosborough, Deputy Defender, Office of State Appellate Defender, of Mount Vernon, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant James Ransom was found guilty by a St. Clair County circuit court jury of the murder of Ernest Tiller and was subsequently sentenced to 14 to 30 years' imprisonment. The trial judge directed a verdict of not guilty as to co-defendant Freddie Macklin at the close of the State's evidence. Ransom appealed, the Appellate Court for the Fifth District, with one judge dissenting, reversed and remanded for a new trial (33 Ill. App. 3d 503), and we allowed the State's petition for leave to appeal.

The events upon which the murder charge was based occurred on the evening of March 5, 1973. Several persons had gathered at the home of Ransom's grandmother, Mattie Bond, when defendants arrived between 9 and 10 p.m. About 15 minutes later Ernest Tiller arrived at the front sunporch door but was prevented from entering by Ransom and Macklin, who pushed him outside. Those in the house heard "hollering and yelling," went outside and saw Tiller lying face down in the road, his head in a pool of blood, and Ransom standing over him holding a board.

The testimony indicated Ransom struck Tiller twice with the board and that Macklin, who was wearing brass knuckles, knocked unconscious two witnesses who tried to intervene. Although these witnesses were taken to the hospital, no one observed what subsequently happened to Tiller. One of the witnesses did state that Tiller's mother said he had gotten up and come to her house after the beating. No other testimony was offered as to decedent's activities or condition between the night of March 5 and March 12, the date of his death.

Defendant has urged in the appellate court and here that the evidence was insufficient to prove beyond a reasonable doubt that defendant caused decedent's death, and that, even assuming the evidence sufficient, reversible error occurred in the admission of prejudicial hearsay testimony by the coroner's physician. We agree with the appellate court that there was "sufficient evidence for a jury to find that Ernest Tiller's death was caused by the beating administered to him by the defendant James Ransom" (33 Ill. App. 3d 503, 505-06). We do not agree, however, that the testimony of the coroner's physician was inadmissible hearsay, which was the basis for the appellate court's remandment.

Dr. John J. Thomas, a surgeon and coroner's physician in St. Louis, testified that he had conducted a post-mortem examination on March 12 of a body the identity of which was known to him "Only from the name given on the body." He was asked the name, defendant objected because the answer would be hearsay, the assistant State's Attorney indicated this proof was "merely a connecting link," and the objection was overruled by the court "Subject to the fact that you can connect this all up." Dr. Thomas then testified "there was a tag on the body" and that the name on the tag was "Ernest Tiller." The doctor related his findings, which included lacerated wounds on the front and back of the skull, which had been sutured, a nine-inch incised wound on the anterior left forearm,

moderate subarachnoid hemorrhage about the back and the frontal lobe of the brain, dilated ventricles, and congestion of the lungs with "a lot of blood." In the doctor's opinion the actual cause of death was traumatic subarachnoid hemorrhage, and the secondary cause was the pneumonia. Dr. Thomas further answered "No" when asked "Were there any other identifying marks on the body apart from the tag?"

Alvin Cobb, the manager of the Officer Funeral Home, testified that he had known decedent and was called by decedent's family to pick up decedent's body at the St. Louis city morgue; that his employees did so and that the witness observed the body when it arrived at the funeral home and recognized it as that of Ernest Tiller; that the body "was marked in two places"; that it bore "an arm band from the hospital which says the name and the doctor." An objection was sustained as to what was stated on the arm band, and the witness was then asked "Was there a mark on there too?" He testified that there was and the name on it was Ernest Tiller. These identifying characteristics were buried with the body. Mr. Cobb also identified as Ernest Tiller a picture stated by witnesses to the beating to be a picture of Tiller.

It is, in our opinion, clear from this record that the State's purpose in offering Dr. Thomas' testimony regarding the name tag on the body upon which the doctor performed a postmortem examination was not, as the appellate court stated, to prove the body to which the tag was attached was that of Ernest Tiller. Rather, it was for the purpose of showing that that body was the same body delivered to the funeral home and identified by its manager as that of Ernest Tiller. For that purpose it was competent, relevant testimony, and the trial judge, recognizing the distinction, properly admitted it. *People v. Carpenter* (1963), 28 Ill. 2d 116.

The problem, if there be any, arises from the fact that Dr. Thomas spoke only of a "tag" attached to the body he

examined, whereas the most reasonable inference to be drawn from Alvin Cobb's testimony is that there was an arm band and a tag on the body he identified as that of Ernest Tiller. We do not regard this as a matter of consequence, however, since it is undisputed that the name "Ernest Tiller" was on the body, and the wounds were compatible with the type of beating described by the witnesses. (*Cf. People v. Gendron* (1968), 41 Ill. 2d 351, 360.) Too, the postmortem appears to have been performed at the St. Louis city morgue, and it was from that morgue that the body was brought to the funeral home.

The judgment of the appellate court is accordingly reversed, and the judgment of the circuit court of St. Clair County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*