THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CURTIS JACKSON, JR., Defendant-Appellant.

First District (4th Division)   No. 77-1644

Opinion filed September 21, 1978.

Ralph Ruebner and David Mejia, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Curtis Jackson, was charged by indictment with the murder of his wife, hereinafter referred to as the deceased. (Ill. Rev. Stat. 1975, ch. 38, par. 9—1.) A jury found defendant guilty of involuntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—3), and the trial court sentenced him to serve not less than 3 nor more than 9 years in the Department of Corrections. Defendant appeals from this judgment, contending that the State failed to prove beyond a reasonable doubt that his actions caused his wife's death.

We affirm.

Edward Cole, allegedly a romantic acquaintance of the deceased, testified that he arrived at defendant's apartment at about 11:30 p.m. on April 7, 1975, and observed defendant, who was asleep in the bedroom. The deceased and Cole had a conversation and then left the apartment to call the police from a pay telephone booth. They then returned to the apartment building where Cole left the deceased in the vestibule while he went to a liquor store. After purchasing liquor, he returned with it to the apartment. At this time, defendant was still asleep in the bedroom. Cole and the deceased drank and talked. The deceased grew tired and lay down on the dining room couch. When Cole finished his drink, he sat on the front of the couch where the deceased was resting and then dozed off.

The next thing that Cole became aware of was the deceased's screams and the sight of defendant pulling her off the couch by her hair. The defendant cursed the deceased and slapped her after he had pulled her from the couch. The victim pleaded with defendant to stop beating her and asked Cole for help. Cole asked defendant to stop the beating, but defendant warned him to stay out of the matter since it was none of his business. Defendant then left the apartment. At this point, the deceased was crying and hysterical.

The defendant returned 15 minutes later and, after having a few drinks, started to beat the deceased once again. At this time, defendant began disrobing the deceased. The deceased then fell down, got up and started walking toward the dining room but suddenly passed out on the floor. Cole tried to cover her body but was warned by defendant to leave her alone. Cole then departed and called the deceased's sister. Cole informed the deceased's sister of the beating and indicated that defendant was about to kill her. Cole also telephoned Jesse Johnson, the deceased's brother. When neither one would take any action, Cole returned to the apartment. Upon his return, Cole observed the defendant sitting and drinking on the couch in the living room, and he also saw that the deceased was still lying where she had previously fallen. Cole noticed that the deceased was still breathing but that some of the hair on her head was missing. Cole again tried to cover the deceased's body and again the defendant snatched the cover off and warned him to leave her alone. Defendant then grabbed the deceased by the hair and pulled her into the living room. Cole then went to sleep until approximately 1 p.m. when he went to work. Prior to departing, defendant asked Cole to shake the deceased to see if he could wake her up. Cole did so, but she would not respond. Subsequent to this incident, Cole made no attempt to contact the deceased.

Police Officer Gino Addams testified that at approximately 3:15 p.m. on April 11, 1975, he responded to a radio call and proceeded to defendant's

third-floor apartment where he met the deceased's brother, Jesse Johnson. Since no one answered the front doorbell, Addams and Johnson went up the back stairs to the third floor. Johnson then opened the apartment's back door, and the police officer entered and observed the deceased lying on the living room floor; she was dead. Homicide Investigator Anthony Katalinic arrived at this location two hours later. Katalinic testified that he observed the deceased lying on the floor; that she had a blouse pulled over her shoulder; and that a pair of blue slacks and woman's underpants were near the body. Additionally, the investigator indicated that there were bald spots on the deceased's head and that clumps of human hair were on the dining room and living room floors. Katalinic stated that the front door of the apartment showed no signs of forced entry and that there was no evidence that the apartment had been ransacked.

A pathologist testified that he performed an autopsy on the deceased on April 12, 1975, and during this examination he observed 11 external burn marks on the chest, abdomen and elbow of the deceased. He also saw bruises on the left and right side of her mammary areas. Additionally, the deceased's neck area had several hemorrhages. Externally, the deceased's face showed a darkened and dried appearance on the left side of the lower nose, upper cheek, upper and lower lip and on part of the jaw. There was a small hemorrhage of the sclera of the eyes which showed trauma to that area, and an internal examination revealed a large scalp hemorrhage. This indicated that trauma was present in that area and was caused by the head striking some object or by something hitting the head. Furthermore, an internal examination of the skull revealed a large subdural hematoma. The pathologist concluded that the cause of death was a cranial-cerebral injury and accompanying subdural hematoma, which caused blood to accumulate between the brain and skull, destroying cells on the compressed lower portions of the brain. The pathologist also indicated that, in these particular circumstances, a coma would normally result prior to death.

Defendant testified in his own behalf and stated that he and the deceased had been married for 10 years. He arrived home at approximately 5:30 p.m. on April 7, 1975, and observed that his wife had been drinking. Defendant then left the apartment to walk his dog and when he returned to the apartment 15 minutes later, the door was locked. Defendant stated that he then took a bottle out of a garbage can, hit the corner of the back door and broke the glass pane, then reached inside the door and opened it. He found his wife asleep on the couch in the living room. At about 10:15 p.m., defendant went to bed. He awoke at approximately 7 a.m. on the morning of April 8 and observed his wife and Edward Cole lying together on the couch bed. Defendant testified that, after he walked over to his wife, shook her and asked her what she was

doing there, he slapped her a couple of times. He then apologized to her, and she returned to the couch and went back to sleep. At about 12:30 p.m., Cole left the apartment after going over and shaking the deceased, who did not awaken completely but mumbled something to him. Later, defendant and the deceased had a conversation during which defendant told her that he was leaving until she made up her mind as to whether she wanted him or Cole.

On April 12, defendant went to Pine Bluff, Arkansas, to see his mother. On April 15, he was arrested for trespassing in Arkansas by a railroad security guard. It was determined that defendant had told the security guard subsequent to his arrest that he had to leave Chicago because his wife died of strangulation. However, defendant claimed that he had choked his wife, but he indicated that she was all right when he left and had died a few days later.

Defendant contends that the State failed to establish a causal connection between his acts and the death of his wife due to a subdural hematoma. We do not agree with this contention.

• 1, 2 The physician, who performed the autopsy, testified that the fatal brain injury was caused either by the deceased hitting her head against something or by some object striking her head. It is well settled that the opinion of a qualified physician is sufficient to establish the cause of death. (See *People v. Harrison* (1946), 395 Ill. 463, 473-74, 70 N.E.2d 596, *cert. denied* (1948), 334 U.S. 812, 92 L. Ed. 1744, 68 S. Ct. 1013.) However, the determination of whether there was a causal connection between defendant's conduct and the deceased's death is a matter properly left to the trier of fact. (*People v. Ellison* (1970), 121 Ill. App. 2d 149, 155-56, 257 N.E.2d 199.) Regarding this determination, the law is well settled that when the State has shown the existence, through the act of defendant, of a sufficient cause of death, the death is presumed to have resulted from such act unless it appears that death was caused by a supervening act disconnected from an act of the defendant. *People v. Meyers* (1945), 392 Ill. 355, 359, 64 N.E.2d 531.

Edward Cole testified to twice seeing defendant drag the deceased by the hair. On one of these occasions the deceased was unconscious. Defendant also beat and slapped his wife two separate times. The deceased, in an attempt to elude her husband's second attack, started toward the dining room but passed out and fell to the floor unconscious. Since Mr. Cole noticed that the deceased was still breathing upon his return to the apartment after calling her sister and brother, it is apparent that she did not die immediately after the second beating. However, the mere fact that there was an interval between the fight and death does not preclude a finding that the fight caused that death. See *People v. Riley* (1964), 31 Ill. 2d 490, 202 N.E.2d 531.

In *People v. Love* (1978), 71 Ill. 2d 74, 81, 373 N.E.2d 1312, eyewitness testimony established that defendant and his wife engaged in a fight. Defendant slapped and hit his wife, causing her to fall to the floor where he began kicking her in the abdomen, hip and vaginal area. The victim died 18 days later from trauma which caused a ruptured spleen and which, according to expert testimony, led to post-operative complications. The court held that the medical testimony presented was sufficient to establish that the beating administered by defendant caused the trauma which in turn caused the death of his wife. See also *People v. Ransom* (1975), 33 Ill. App. 3d 503, 341 N.E.2d 752, *rev'd on other grounds* (1976), 65 Ill. 2d 339, 341, 357 N.E.2d 1164 (1976).

██ In the present matter there was no contradictory evidence or evidence of a supervening cause proffered by defendant concerning the death of his wife. The medical evidence, as stated above, clearly establishes that decedent's injury was the result of an external force applied to the head area. It is true that the physician did not testify that the beating of the deceased by defendant caused the subdural hematoma. However, since there is no evidence of any other external force to the deceased's head area, apart from the beatings administered by the defendant, we must conclude that defendant's acts were sufficient to cause his wife's fatal injury.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and LINN, J., concur.