THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE POWELL, Defendant-Appellant.

First District (1st Division)    No. 79-1267

Opinion filed September 2, 1980.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Michael Demetrio, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, George Powell (defendant) was found guilty of murder and sentenced to 20 years. He appeals.

John Snow, a 15-year-old high school student, sitting on a mail box in Chicago during the afternoon of November 15, 1974, saw three men "wrestling about 100 feet away" in the driveway of a Bell Telephone building. He started to walk toward them, east on the north side of the street. About 15 or 20 feet away, he heard three shots and saw sparks emanating from where the three men were together. Two of the men ran toward him. The witness identified one of these men as defendant. Defendant was wearing a black three-quarter length coat and a dark knit hat. The other man wore an army field jacket and no hat. At one point, defendant bumped into a trash can. He was then 10 or 12 feet from the witness. Lights were on in front and in the entrance of the telephone building, in a parking lot and "right across the street." At that time the sun was down.

After the witness heard the shots he saw the third man stagger and fall.

The witness recognized this person, the deceased, as William Brooks. He had known Brooks for approximately six months to a year. He identified a photograph of the deceased. A police officer, Walter Newton, testified he was told by the witness Snow that the men who ran away were black males, 19 and 20 years old, about 5 feet 5 inches to 5 feet 7 inches tall. Officer Newton observed and examined the man lying in the street. He had been shot and was dead. In the officer's opinion, lighting conditions were very good. Several street lights were on in the area. There was light from the Bell Telephone building and from homes in the vicinity. Some jewelry, cash, and a pay check in possession of the deceased were recovered.

On November 18, 1974, Police Investigator Richard Law showed Snow a picture of a man named Michael Jones. Snow stated the picture was similar to one of the two men he had observed but he could not be certain from a photograph. On December 1, 1974, Snow viewed this same individual at the police station and stated he was not one of the persons he saw attack the deceased.

On December 10, 1974, the witness Snow observed defendant and the other man in a grocery store in the area. He recognized defendant as one of the individuals who had fought with the deceased and fled. He notified the police. On that day, Investigator Law showed Snow five photographs. Snow was not sure how many pictures were in the group. Snow told Officer Law one of the pictures showed a strong resemblance to one of the men who had attacked the deceased. Again, on February 13, 1975, Snow viewed six photographs shown by Investigator Thomas McCarthy. He selected a picture of the defendant and stated that it "strongly resembled" one of the individuals. The investigator obtained a warrant and defendant was arrested on May 27, 1975. Defendant was placed in a lineup and was identified by the witness Snow. A photograph of the lineup was received in evidence.

Shortly prior to the lineup defendant was interviewed at the police station by Investigator Thomas O'Connor. He was advised of his *Miranda* rights and was told he had been identified in connection with the homicide in question. Defendant told the investigator, "I was there but I didn't do the shooting." Defendant said, "A guy named Demus Knight did the shooting." After the lineup, Investigator O'Connor told defendant he had been identified. Defendant stated, "I had nothing to do with it. I wasn't there." We will comment upon additional testimony as required.

## I.

■■ On reasonable doubt, defendant first raises the issue of accountability. The statute describes accountability as a situation in which one person "with the intent to promote or facilitate" the offense "aids, abets, agrees or attempts to aid" another person "in the planning or commission of the

offense." (Ill. Rev. Stat. 1973, ch. 38, par. 5—2.) Application of these principles to any case raises "an issue of fact for the determination of the jury * * *." (*People v. Hubbard* (1973), 55 Ill. 2d 142, 147, 302 N.E.2d 609.) Accountability and the presence of a common design may be proved by circumstantial evidence. (*People v. Tate* (1976), 63 Ill. 2d 105, 109, 345 N.E.2d 480.) Although it is correct that proof of the presence of the defendant at the commission of the crime is not alone sufficient to prove accountability, it has frequently been held that "presence of a defendant at the commission of the crime, without disapproving or opposing it * * *" is one of the circumstances which tend to establish guilt. *People v. Morgan* (1977), 67 Ill. 2d 1, 10, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411, and authorities there cited.

■■ In the instant case, defendant was observed participating with another person in a fight with the deceased. After the shots defendant and another man fled precipitously from the scene. In response to proper questioning by the police, defendant admitted he was present at the place and time in question and stated he did not do the actual shooting. In a situation of this type, the guilt of the defendant on the theory of accountability has been proved beyond reasonable doubt. See *People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 653, 324 N.E.2d 226.

Defendant attacks the strength of the identification testimony. The legal principles regarding identification need hardly be repeated. The identification is to be judged from the totality of the circumstances. (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) Factors to be considered are: the opportunity of the witness to view the criminals at the time of the crime; his degree of attention at that time; the accuracy of his prior description of the criminals; the degree of certainty of the identification; and the elapsed time between the crime and the confrontation. (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375; *Manson v. Brathwaite*; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) If upon consideration of these factors the identification is deemed to have been reliable it is admissible despite the existence of some suggestive features.

It is not necessary to elaborate on the strength of the identification here. The testimony of the identifying witness meets each and every requirement of the test above set forth. We find his testimony clear and convincing. The careful and observant trial judge found the witness "a very credible and clear and convincing witness" as far as he could determine. No point is raised regarding any suggestive factors in the lineup. The witness had an amply sufficient opportunity to observe the defendant first from a distance and then closer as the defendant ran toward him. The lighting assisted his identification. The failure of the witness to make a positive

identification from photographs is urged by the defendant as a sign of uncertainty. On the contrary, it may be asserted with equal validity that the witness demonstrated he would not make an identification without complete certainty.

■■ Where identification is an issue, " ' "the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made." ' " *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666, quoting *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.

In a bench trial, the trial court has the task of determining the weight and credibility of the testimony and deciding if guilt has been established. We may not set aside the result reached " 'unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear.' " (*People v. Lofton* (1977), 69 Ill. 2d 67, 73, 370 N.E.2d 517, quoting *People v. Fleming* (1971), 50 Ill. 2d 141, 146, 277 N.E.2d 872.) In our opinion the testimony of this identifying witness is clear and convincing and sufficient beyond reasonable doubt.

## II.

The State called the widow as a life and death witness. She saw her late husband alive on November 15, 1974, and dead at the morgue on November 16, 1974. The witness Snow saw the victim stagger after the shots and then fall. He recognized this person, the deceased, as Michael Brooks. Officer Newton inspected the body of deceased on the street. The deceased had been shot. He and the widow identified a photo of the deceased. The body was transported to Mt. Sinai Hospital. A doctor there pronounced the victim dead on arrival. A pathologist testified he examined the corpse on the following day. Three times, without objection, the doctor referred to the body as that of William Brooks. However, the doctor had no firsthand knowledge of the identity of the body. The body had been labeled by a clerk in the office of the medical examiner. The doctor described three bullet wounds on the body as the cause of death. He dictated and signed a protocol relating to the autopsy of the victim William Brooks. He used this protocol to refresh his recollection in testifying. Defendant urges there was a failure to prove the corpus delicti because the identification of the body by the pathologist was improper hearsay.

■■ In our opinion, proper proof has been made beyond reasonable doubt that a criminal agency caused the death of the victim. (See *People v. Gendron* (1968), 41 Ill. 2d 351, 360, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.) This proof is both direct and circumstantial. In addition, there is a life and death witness here, direct police testimony, and direct evidence of the name of the deceased duly

identified as William Brooks. We have had occasion to consider this very same point and to deny this contention in *People v. Guthrie* (1980), 85 Ill. App. 3d 831, 407 N.E.2d 593. In *Guthrie*, in the absence of a life and death witness, we found ample circumstantial evidence of the corpus delicti and we cited and discussed the pertinent statute making the coroner's protocol prima facie proof of the facts therein stated. (See Ill. Rev. Stat. 1977, ch. 51, pars. 3.01, 3.02.) In addition, the testimony of the doctor regarding the identity of the body upon which he performed the autopsy was not hearsay. See *People v. Ransom* (1976), 65 Ill. 2d 339, 342-43, 357 N.E.2d 1164.

### III.

As above shown, the witness Snow viewed a series of five photographs on December 10, 1974, and six photographs on February 13, 1975. Defendant urges effective cross-examination of the photographic identification was impossible without production of the photographs.

As the prosecution correctly points out, defendant filed a written motion for new trial. No point was raised therein regarding production of the photographs or any prejudice resulting to defendant therefrom. If there was error, it was therefore waived. (*People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) Additionally, no point was raised by defendant during the entire trial with reference to the production of the photographs and the issue of cross-examination thereon. This is an independent and equally cogent reason for waiver of the point. *People v. Lykins* (1979), 77 Ill. 2d 35, 38-39, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602.

For the sake of completeness, we will add the record shows defendant never requested production of these photographs in pretrial procedure or during trial. Defendant's attorney subjected defendant and two police witnesses to full cross-examination without requesting the photographs. No point was made by defendant at any time regarding any suggestive procedure in connection with the viewing of the photographs. Any such argument would have been superfluous. As above shown, there is a sufficient independent basis for the in-court identification of the defendant made by the witness. (*People v. Williams* (1975), 60 Ill. 2d 1, 10-11, 322 N.E.2d 819.) We find no error in this regard.

### IV.

The only witness called by defendant was Henry Crow, an investigator for the prosecution. The People made a motion *in limine* to preclude his testimony. The People predicated this on the fact Crow was called to testify regarding a lineup previously viewed by a person named Bradford Boyd. The trial court denied the People's motion.

Henry Crow testified he conducted a lineup on June 27, 1975. He produced two photos of the lineup but testified neither one was true and accurate because the faces of the persons present were not distinguishable. The photograph was too dark because of lack of lighting. Thereafter the trial court struck his testimony.

■■ Defendant urges Bradford Boyd was an eyewitness to the occurrence. The trial record before us does not disclose whether Boyd was or was not an eyewitness. The State's answer to discovery simply lists Bradford Boyd as one of some 50 possible witnesses. Additionally, any testimony by Henry Crow as to what Bradford Boyd may have said concerning the lineup was incompetent hearsay as the People contended. Bradford Boyd was not present in open court and subject to cross-examination. (See *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, cited with additional authorities in *People v. Robinson* (1978), 73 Ill. 2d 192, 200, 383 N.E.2d 164.) Additionally the record fails to disclose if defendant was one of the persons who was present in the lineup in question. The record shows simply an assertion by defendant's counsel that "the defendant was in the lineup" and "Mr. [Bradford] Boyd viewed it * * *."

■■ Defendant urges the failure of the State to call Bradford Boyd as a witness should raise a presumption in favor of defendant's innocence. On the contrary, the People are "not obligated to call every witness who might testify concerning evidence of the crime" and failure to call any such witness does not give rise "to a negative inference." *People v. Farnsley* (1973), 53 Ill. 2d 537, 545, 293 N.E.2d 600; *People v. Bob* (1976), 36 Ill. App. 3d 211, 215, 343 N.E.2d 652.

On August 18, 1980, defendant filed a supplemental record containing a police report which describes Bradford Boyd as an eyewitness to the crime. This supplemental record does not change our view of this situation. Even assuming defendant was included in the lineup, Boyd was in fact an eyewitness and Boyd attended the lineup and failed to identify defendant, these facts are irrelevant to any question of what Snow was able to observe and recall. "The mere fact that others failed to identify the accused does not require reversal." *People v. Owens* (1977), 46 Ill. App. 3d 978, 990, 361 N.E.2d 644, *appeal denied* (1977), 66 Ill. 2d 634.

## V.

■■ Defendant told Investigator O'Connor the actual killer was Demus Knight. The officer testified he was unable to locate Knight. On cross-examination, defense counsel asked the officer if he knew Knight had been killed by a policeman during 1972. The officer replied he did not know. Defendant urges this was prejudicial because the trial court permitted the State's Attorney to argue defendant attempted to escape responsibility by giving the police the name of a dead man.

The record shows defendant's trial counsel conducted himself in a competent manner during the entire proceeding. The single complaint against his professional conduct is asking this one question on cross-examination. Many most competent and even celebrated trial attorneys have had the sad experience of asking the wrong question on cross-examination. This type of incident does not show incompetence of counsel. We need not again review the standard of competency of trial counsel as established in *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677. We find no evidence here of incompetent representation. Also, in view of the strong evidence of guilt before us, we cannot find the answer to this question was a material factor in the conviction. The judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.